713 S.W.2d 858 (1986)
In re K.S., D.S. and J.W., Minors, and Thomas D. Carver, Juvenile Officer, Respondents,
v.
M.N.W. and J.W., Appellants.
Nos. WD 37536, WD 37538.
Missouri Court of Appeals, Western District.
July 29, 1986.
*859 John J. Kitchin, Sean W. McPartland, John Kurtz, Kansas City, for Guardian ad Litem.
Debra J. Wilson, Kansas City, for Juvenile Officer.
Before CLARK, C.J. and TURNAGE and KENNEDY, JJ.
CLARK, Chief Judge.
This is an appeal from the judgment[1] of the Juvenile Division of the Circuit Court which terminated parental rights in three children, K.S. born October 3, 1977, D.S. born June 15, 1979 and J.W. born May 12, 1982. Appellant M., the mother of all three children, appeals all three termination orders severing her rights. Appellant J. is the father only of the youngest child, J.W., and therefore his appeal concerns only the order as to that child. The biological fathers of K.S. and D.S. have not appeared and the orders terminating their rights are not at issue.
At the outset, it is important to an understanding of the discussion which follows to set out the general outline of the case. Termination of parental rights in M. as to K.S. and D.S. was sought on grounds of repeated and continuous abuse of those children. Termination of parental rights in M. and J. as to J.W., who was not shown to have suffered abuse, was sought on the grounds of the abuse committed upon K.S. and D.S. and also on the charge that willful and wanton neglect by M. and J. had caused the death of a fourth child, N.W. The latter cause, neglect resulting in N.W.'s death, was also cited as a ground for terminating parental rights in the abused children, K.S. and D.S. The trial court sustained all the charges thus providing dual grounds for termination of parental rights in each child.
As to the children K.S. and D.S., if there was clear and convincing proof that they suffered repeated and continuous abuse themselves, the termination judgment would be sustainable on that ground, and the allegations of neglect resulting in the death of N.W. would be surplusage. As to J.W., however, the termination order was based solely on the treatment of his siblings. It is therefore necessary to consider in his case the effect both of the abuse to K.S. and D.S. and the neglect alleged to have resulted in the death of N.W. The sufficiency of proof of this latter charge will be considered first, primarily as it bears on the order terminating parental rights in J.W. and secondarily as it was found to be a supporting cause for the termination order in the cases of K.S. and D.S.
Point I of appellants' brief contends there was insufficient evidence to support the trial court's finding that M. and J. knowingly permitted the death of N.W. due *860 to willful and wanton neglect and that an order terminating parental rights to the surviving children could not be based on that ground. We agree.
The applicable statute is § 211.447.2(2)(e), RSMo. Cum.Supp.1984[2] which authorizes terminating the rights of a parent to a child if the termination is found to be in the best interests of the child and if the court also finds:
"(e) The parent has knowingly committed or knowingly permitted a single incident of life threatening or gravely disabling injury or disfigurement of the child or serious injury or death of a sibling due to parental abuse or willful and wanton neglect."
The allegation here was that M. and J. knowingly deprived N.W. of proper nourishment through willful and wanton neglect thereby causing his death.
To sustain the termination orders, the evidence must have demonstrated by clear, cogent and convincing proof the existence of one of the conditions forming the basis for termination. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985). This standard of proof is met when the evidence instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true. In Re Adoption of W.B.L., 681 S.W.2d 452, 454 (Mo. banc 1984). In considering on appeal the sufficiency of the evidence to support an order terminating parental rights, the standard of review is that announced in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976), but applied with recognition of the high clear, cogent and convincing standard of proof which Missouri law requires be satisfied in termination cases. In Re Adoption of W.B.L., supra at 454. So stated with recognition of the trial court's prerogative to determine the credibility of witnesses and to accept or reject all, part or none of the testimony, In the Interest of D.V.V., 677 S.W.2d 396, 402 (Mo.App.1984), the facts relative to the death of the sibling, N.W. were as follows.
N.W. was born September 1, 1983 at the home of M. and J. approximately one month before full term. The baby and mother were taken to a hospital shortly thereafter. M. returned home the following day, but N.W. was retained at the hospital for more than one week. N.W. was subsequently released to J. and M.'s care with instructions from the doctors and a supply of infant formula sufficient to last six weeks. On October 19, 1983, J. took N.W. back to the hospital where it was found that N.W. was suffering from severe malnutrition. The child was transferred to Children's Mercy Hospital on the same day because of his critical condition.
On admission at the children's hospital, a two week history of nausea and vomiting was recorded. During the following days of observation, it was noted that N.W.'s stomach was distended and a tentative diagnosis of necrotizing enteritis or enterocolitis was made. The child's condition deteriorated and on October 24, 1983, surgery was performed. Portions of the small bowel and the entire stomach were found to be necrotic (lifeless) and were removed. Although N.W. survived the surgery, he expired some twenty-eight hours later.
The surgeon recorded the primary diagnosis to be gastric necrosis and small bowel necrosis and the secondary diagnosis, septic shock. An autopsy was performed. The county medical examiner testified that death resulted from hemorrhagic gastroenteritis associated with severe malnutrition. No one cause was ascribed to the apparent lack of nourishment to N.W.'s internal organs. There was evidence of bacterial contamination, a lack of blood supply caused by a twisting of the intestine and anemia. In response to the question as to whether poor nutritional status or severe malnutrition had caused N.W.'s death, the medical examiner answered: "No, I would not make that connection. Malnutrition was a factor in the sense that a child like this could certainly have less resistance. This *861 child was anemic and had, according to his evaluation, protein deficiency and certainly he would be less able to survive any illness much less a severe condition like this."
Termination of parental rights to K.S., D.S., and J.W. in this case under the provision of § 211.447.2(2)(e) required clear, cogent and convincing proof, first that by willful and wanton neglect, M. and J. intentionally withheld food from N.W. and, second that malnutrition was the cause of N.W.'s death. Neither component was proved beyond speculation and surmise, if at all. The facts were that M. was supplied a quantity of formula by the hospital sufficient to last well beyond the period when N.W. was returned for his final hospitalization. M. testified that the formula was given, but for at least two weeks, the baby was nauseous and refused to eat. The hospital records confirmed this account. The reasonable inference is that other conditions of an internal origin in the child had disrupted his normal intake and digestive process. The most which can be said is that M. and J. should have taken the baby to the hospital earlier, not that they withheld nourishment.
The second condition, that malnourishment was the cause of death was expressly disclaimed. Indeed, the evidence was that N.W.'s condition for two days after admission to the hospital was clinically satisfactory but he suddenly declined thereafter due to an internal infection. There was no evidence that the actual cause of death, the lifeless condition of stomach and bowel, was caused by lack of nourishment. Instead, the medical examiner testified that the severe condition may have been the result of a lack of blood supply, a twisted colon, the consequence of surgery or other factors. Even though the undernourished state of the child made survival less likely, there was no testimony N.W. would have lived even if well nourished.
To the extent the judgment terminating parental rights to K.S., D.S. and J.W. depended on willful and wanton neglect resulting in death of a sibling as charged and found by the trial court, the proof was insufficient to support the judgment. This conclusion leads to examination of the alternate ground for termination, the repeated and continuous abuse of K.S. and D.S. In this aspect of the case there are two propositions, the termination of parental rights to K.S. and D.S. upon proof of abuse inflicted on them and the termination of parental rights to J.W. based on proof that his siblings K.S. and D.S. were abused.
Appellants contend in Point IV of their brief that there was insufficient evidence of abuse to sustain the charge. Point V argues that even if abuse of K.S. and D.S. was shown, that is not a statutory ground for terminating parental rights in the unabused child, J.W. The first issue is a question of proof, the second a question of law.
Section 211.447.2(2)(d) provides for termination of parental rights if that be found to be in the best interests of the child and if it also be found that:
"The parent has repeatedly or continuously abused the child by causing physical injury or mental injury to the child, or knowingly permitted such abuse by another."
The facts of the case as to repeated or continuous abuse of K.S. and D.S. stated under the standards discussed earlier are as follows.
Primary witnesses testifying as to the abuses were Dr. Stephen Salanski, a physician who examined K.S. and D.S. at Children's Mercy Hospital and K.S. himself who was age seven when he testified.[3] Dr. Salanski found on examining K.S. that he had greenish bruises on the forearm, bruises and excoriation on the left buttock, an old healing scar in the shape of a belt buckle on the back, eleven linear scars appearing to be cord or switch marks and scars on the upper arms. The boy was limping because of bruises to his left leg and thigh. He also had a burn and bruise mark. K.S. was markedly underweight for *862 his age and height. Examination of D.S. also revealed scars and marks. On his back he had a number of scars consistent with cord loop marks and similar marks on his left hip and thigh. A healing stress fracture of the left femur was indicated to be the result of repeated trauma. D.S. was also underweight with a protuberant abdomen and muscle wasting.
K.S. testified that M. and J. frequently hit him with a belt and with a stick and that the same punishment was administered to D.S. He also said that J. had hung him by his clothes from a nail in the wall, that he was held by his feet out a window and that his head was held under water in the bathtub. Testifying in her own behalf, M. acknowledged that she whipped the children four or five times a month with a belt. She and J. acknowledged the other incidents of holding K.S. out the window and under water, but offered other explanations for the events. M. also expressed concern about the marks and scars which the belt whippings had left and on this account, she had discontinued the practice. The wasted physical condition of K.S. and D.S. was attributed by M. to a lack of food stamps.
Applying the standard of review and standard of proof previously discussed, it is at once apparent that the proof outlined above established clearly, cogently and convincingly that K.S. and D.S. had been repeatedly and continuously abused by M. and by J. with M.'s knowledge and permission, and that in consequence, K.S. and D.S. suffered physical if not mental injury. Coupled with the admissions by M. and J. and the implausible explanations for the window and bathtub incidents, the testimony by Dr. Salanski and K.S. satisfied the requirement for proof to sustain termination of M.'s parental rights to K.S. and D.S. Appellant's Point IV is denied.
Accepting as satisfactory the proof of repeated or continuous abuse of K.S. and D.S. resulting in physical injury, the next issue is whether those facts as a matter of law warranted the termination of M. and J.'s parental rights to J.W. who, so far as the evidence showed, had not suffered abuse sufficient for termination to be sought. Appellants assert that § 211.447.2(2)(d) under which proof of abuse to K.S. and D.S. was presented makes no provision for termination where the proven abuse is to a sibling.
The trial court obviously relied on § 211.447.2(2)(d) for its finding that parental rights to J.W. be terminated because the order uses the language of that section. The finding recites:
"* * * that (M. and J.) have repeatedly and continuously abused the child's siblings by causing physical and mental injury to those children."
Notably, the court made no finding as to a life-threatening or gravely disabling injury or disfigurement nor even of a serious[4] injury to the abused siblings, a potential ground for termination under § 211.447.2(2)(e). The judgment simply expands the conditions for termination under § 211.447.2(2)(d) to include abuse of siblings despite the absence of statutory language to this effect.
Were this court entitled to decide the case only upon the language of the statute as applied to the evidence presented, the judgment terminating the rights of appellants to J.W. would be reversed. Whether by legislative oversight or by intention, no provision is made in § 211.447 to terminate parental rights to an unabused child unless proof be made of serious injury to or death of a sibling. This court is, however, bound by prior decisions of the Supreme Court in which this question has been otherwise ruled in a case of similar facts. *863 In Matter of D.G.N. v. S.M., supra, two siblings were found to have been subjected to repeated abuse resulting in marks and scars similar to those reported in this case as discovered on examination of K.S. and D.S. The children were then taken from the parents' custody and placed in foster care. Later, the mother gave birth to another child, the subject of the termination proceeding. The ground alleged as the basis for termination of parental rights in the newborn child was the repeated and continuous abuse of the other children, then in foster care. Using § 211.447.2(2)(e) as authority, the trial court ordered termination of parental rights to the infant based on the prior abuse of the older children. No reference appears to any incident of life-threatening, gravely disabling or serious injury to the siblings as the basis for invoking the provisions of § 211.447.2(2)(e). The Supreme Court took the case on transfer and affirmed using the following language:
"The record leaves no doubt that the state proved its case by clear, cogent and convincing evidence. Substantial evidence existed for the trial court's determination that appellant inflicted or knowingly permitted the abuse or neglect of her natural children J.M. and C.M. * * * This abuse or neglect to J.M. and C.M. establishes, under § 211.447.2(2)(e), prima facie evidence of a home environment wholly unsafe for another sibling."
It is significant to note that the quotation above excerpted from the opinion makes no reference to the language of § 211.447.2(2)(e) "a single incident of life threatening or gravely disabling injury or disfigurement * * * or serious injury or death of a sibling," but instead uses the language of § 211.447.2(2)(d), infliction of abuse upon the child by the parent or permission of such abuse by another.
Abuse causing physical injury, as contrasted with abuse causing life threatening, grave or serious injury or death had not, prior to D.G.N. v. S.M., supra, been regarded as grounds to terminate parental rights to a sibling who suffered no injury.[5]D.G.N. v. S.M., supra, however, must be read as standing for that proposition, to-wit, that § 211.447 permits termination of parental rights to a child upon proof that the parent has inflicted or knowingly permitted another to inflict abuse upon a sibling. Although there was in this case no finding by the trial court of the constituent elements recited in § 211.447.2(2)(e) and the finding was at variance from the petition for termination which relied on those elements and § 211.447.2(2)(e), we regard D.G.N. v. S.M., supra as compelling us to affirm the judgment. Appellants' Point V is therefore denied.
In summary of the foregoing conclusion applicable to appellants' Points I, IV and V, we find the termination orders based on the charge of willful and wanton neglect resulting in the death of N.W. not to be sustainable because of a failure of proof by clear, cogent and convincing evidence either that M. and J. withheld nourishment from the child or that lack of nourishment was the cause of his death. Termination of parental rights to K.S. and D.S. was sustainable on the alternate ground and the judgment is entitled to affirmance as to those children because abuse of them on a continuous and repeated basis was shown. The judgment terminating parental rights to J.W. must be affirmed because of the proof that K.S. and D.S. were abused and the controlling precedent of D.G.N. v. S.M., supra.
Point II of appellants' brief asserts that K.S. should not have been permitted to testify because it was not demonstrated that the boy was competent to have observed at the time or to have later recalled the events of abuse to himself and D.S. *864 The argument rests on the statutory presumption that a child under age ten is incompetent to testify, § 491.060, and that the preliminary questioning of K.S. did not establish his capability.
The mere fact that a child has not attained age ten does not disqualify him as a witness but calls for a judicial determination of the child's abilities to observe and thereafter relate his experiences accurately. State v. Grady, 649 S.W.2d 240, 243 (Mo.App.1983). The decision as to whether an under age witness is competent to testify rests within the sound discretion of the trial court and the ruling will not be disturbed absent a demonstration of a clear abuse of that discretion. State v. Smith, 679 S.W.2d 899, 901 (Mo.App.1984).
Appellants here stress that evidence was not produced by the juvenile officer showing K.S. had the mental capacity at the times the alleged acts of abuse were committed to observe, perceive and register the events nor a later memory sufficient to recollect his own observations. The argument is based entirely on the questions and responses K.S. gave during the inquiry into the subject of competency before testimony on the merits of the case was given. Appellants contend the voir dire examination of K.S. did not establish at all his ability to perceive the events which occurred when he was age five and that testimony about his power of recall showed discrepancies and absence of memory.
On appellate review of a decision permitting a child to testify, the court may look not only to the voir dire examination, but also to the child's trial testimony. State v. Stewart, 596 S.W.2d 758, 759 (Mo.App. 1980). Examination of the testimony given by K.S. in this case leads to the conclusion that the child did comprehend at the times when punishment was administered just what was happening and later, a recollection of the unpleasant and painful experiences. It is true that he did on voir dire display some memory lapses but on the whole, his testimony was comprehensive and coherent. There was sufficient evidence to establish a basis for permitting K.S. to testify and no abuse of discretion by the trial court in so ruling.
In their Point III, appellants assert that Dr. Salanski should not have been permitted to testify that in his opinion the injuries he found on examination of K.S. and D.S. were the result of abuse. They say Dr. Salanski was not qualified as an expert to express the opinion because he did not have adequate training or experience in child abuse cases. It is to be noted that appellants have made no objection to Dr. Salanski's qualifications as a physician experienced in family practice. The objection is that in matters of child abuse, Dr. Salanski had only seen one other abuse case and he was therefore not competent to reach a conclusion about the source of the bruises and marks found on K.S. and D.S.
An expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons who have no training are incapable of forming an accurate opinion or deducing correct conclusions therefrom. Eichelberger v. Barnes Hospital, 655 S.W.2d 699, 704 (Mo.App. 1983). The extent of an expert's experience or training in a particular field goes to the weight of his testimony and does not render his testimony incompetent. In Interest of C.L.M., 625 S.W.2d 613, 615 (Mo. banc 1981). In a court tried case, the weight and credibility of the expert's testimony are matters for the trial judge. In Interest of L.A.H., 622 S.W.2d 319, 323 (Mo.App.1981).
Dr. Salanski's opinion as to the nature of the marks and bruises found on the children together with his observations as to whether they were caused by trauma were certainly within the normal area of expertise possessed by a practicing physician. If, as Dr. Salanski found, the marks and bruises indicated repeated infliction of blows upon the children by cords, belts and switches, it was self evident that abuse by someone had occurred. It was not the conclusion of abuse that was contributed by the doctor's testimony but his physical and clinical findings which compelled that *865 result. The expression of opinion to which appellants take exception was essentially superfluous. Even if that not be a fair analysis of the record, however, the trial judge was acquainted with Dr. Salanski's qualifications and he was therefore entitled to give the doctor's opinions such weight and value as he deemed them to warrant. There was no trial error in the receipt of Dr. Salanski's testimony.
In their final point, appellants argue that the evidence did not support a finding that termination of appellants' parental rights was in the best interests of the children. The contention on this point is essentially based on the facts that during the period when the abuse and neglect of the children occurred, M. and J. were in distressed financial circumstances and that subsequently their pattern of life changed for the better. As the brief describes it, M. and J. "have obtained help and have become better people since the time the children were taken away from them."
The cases indicate that whether the natural parents' home environment presents a future danger to the children based on the proof of prior neglect or abuse and whether the childrens' best interests are served by termination is a judgment to be made by the trial judge under subjective standards. D.G.N. v. S.M., supra; J.H.H. v. J.D., 662 S.W.2d 893, 897 (Mo.App.1983). In reaching that judgment, the court considers factors including the nature and extent of past abuse and neglect, the length of time parent and child have been separated and placement options. Whether an abusive parent has reformed is but one consideration and, of course, may be rejected by the trial judge as with any other evidence presented. In this case, with the record of abuse committed upon K.S. and D.S. continuously for a substantial period of time, this court cannot justify a finding that the trial judge erred in his determination that the childrens' best interests were served by the judgment rendered. Applying a subjective standard, the trial judge was entitled to find that danger to the children remained in the environment of M. and J.'s home and that their best interests would not be served by returning them there.
The judgment terminating M.'s parental rights to K.S., D.S. and J.W. and J.'s parental rights to J.W., as well as the unappealed judgments terminating the parental rights of T.P. to K.S. and S.S.'s parental rights to D.S. are affirmed.
All concur.
NOTES
[1] The cases as to the three children are consolidated and for purposes of this opinion will be considered as one case with a single judgment.
[2] All statutory references are to RSMo. Cum. Supp. 1984.
[3] Points are raised by appellants regarding the admissibility of the evidence presented from these witnesses. Those contentions are subsequently addressed in the opinion and rejected.
[4] It is arguable that the belt and loop marks and scars could have been deemed to constitute serious injury under the provisions of § 211.447.2(2)(e). There is no statutory definition distinguishing between physical injury as contemplated by § 211.447.2(2)(d) and serious injury under § 211.447.2(2)(e). Here, however, the court made no finding that serious injury resulted and quite apparently did not base judgment on that ground.
[5] The cases cited in D.G.N. v. S.M., supra do not so rule. In Re A.A., 533 S.W.2d 681 (Mo.App. 1976) was a placement case, not a proceeding to terminate. Matter of C.W.B., 578 S.W.2d 610 (Mo.App.1979) also did not involve termination of parental rights but was a custody contest between the mother's husband and the maternal grandmother. In the only termination of rights case cited, In Interest of J.A.J., 652 S.W.2d 745 (Mo.App.1983), the evidence established death of a sibling and grave injury to another.