723 S.W.2d 50 (1986)
In the Interest of A.M.K, A.M.K., S.M.K. and S.M.K.
L.K., Appellant,
v.
Gerald H. POEPSEL, Respondent.
No. 49906.
Missouri Court of Appeals, Eastern District, Division Four.
November 18, 1986.
Motion for Rehearing and/or Transfer Denied December 16, 1986.
Application to Transfer Denied February 17, 1987.
*51 Michael W. Brown, Union, for appellant.
Melvin G. Franke, Union, for respondent.
*52 GARY M. GAERTNER, Presiding Judge.
The natural mother, age 25, appeals from a judgment terminating her parental rights in her four minor children, A.M.K.(A.), age eight, A.M.K.(A.M.), age six, S.M.K.(S.), age five, and S.M.K.(S.M.), age four. The two eldest children are boys and the two youngest are girls. The juvenile court ordered termination pursuant to §§ 211.447-2(2)(i)b, 211.447-2(1), 211.447-2(2)c, and 211.447-2(2)d RSMo Cum.Supp.1984.[1] We affirm.
Appellant contends that there was no clear, cogent and convincing evidence to support termination under the provisions of Chapter 211, that the petitioner failed to fulfill its requirements contained in § 211.447-2(2)(i)b, that the court erred in admitting certain evidence, and that she did not consent to the termination of her parental rights.
The termination of parental rights requires the trial court to find clear, cogent and convincing evidence of a violation of one or more of the statutory conditions set forth in Chapter 211. The trial court's opportunity to judge the credibility of the witnesses is given due regard, and its decree will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo.banc 1985). The best interests of the child are the primary concern in this type of proceeding. Juvenile Office of Cape Girardeau County v. M.E.J., 666 S.W.2d 957, 960 (Mo.App.1984).
In appellant's first point, she contends that she did not violate § 211.447-2(2)(i)b, which is commonly referred to as the "failure to rectify" provision. Also, she claims that the Division of Family Services (DFS) failed to use reasonable, diligent, and continuing efforts to help her rectify the conditions, as required by statute.
At the time DFS intervened, the family was without proper food and clothing, the electricity had been disconnected, and appellant feared imminent eviction. Appellant had mismanaged the financial aid she had received and had failed to apply for additional food stamps or AFDC benefits. The substance of the conditions which formed the basis to terminate parental rights was appellant's inability to properly support her children. The trial court found that appellant failed to rectify her inability to support the children because her employment was sporadic and her monthly earnings, of at most $180.00, would not cover housing, utility, food and clothing expenses. The court also found that appellant would not, even if given more time, rectify the conditions on a continuing basis because she repeatedly demonstrated a childlike dependence on others for her own basic support.
The record indicates that DFS attempted to help appellant rectify the conditions and reunite her with the children by providing food and housing, securing a placement for appellant and her children at a residential home that taught parenting skills and promoted self-sufficiency, referring her to community service programs, and directing her to psychological counselors. DFS also arranged visits between appellant and her children. The income maintenance branch of DFS offered to help appellant apply for general relief, AFDC, food stamps, and heating aid. Despite DFS's efforts, appellant left the six-month residential placement program after one week; she missed meetings of the community service programs; her attendance at therapy sessions was minimal; and she failed to complete applications for financial assistance. Appellant did visit with her children, but she also cancelled visits and failed to see them regularly.
Based on the evidence in the record, we find that there was clear, cogent, and convincing evidence of appellant's inability to rectify the conditions on which the petitions to terminate were based, that she will not, even if given more time, rectify the conditions on a continuing basis, and that DFS *53 did not fail to use reasonable, diligent and continuing efforts to help appellant rectify the conditions. Appellant's first point is denied.
Appellant's next allegation is that she should have been allowed to withdraw her consents to the termination of her parental rights because her consents were not knowingly, voluntarily and intelligently given. On March 27, 1984, appellant executed "Consent of Parent to Give Up Child" forms (consents) in full compliance with § 211.447-3, having signed them before a notary and two witnesses. Appellant had executed identical consents on January 10, 1984, and then was allowed to withdraw them. The trial court denied appellant's request to withdraw the March 27th consents because it found that the appellant had given her consent knowingly, voluntarily, and intelligently.
The record shows that appellant told Ruth Mihevc, a psychotherapist, that she wanted to give her children up for adoption because she recognized that she could not provide for them. Further, she stated that she wanted a chance to put her own needs first and improve her life. Appellant told Paula Sutton, a DFS social service worker, that she wanted to relinquish her parental rights because the children were too great a strain on her. She discussed her intentions to relinquish parental rights with her children and with the staff members at the residential home. Where the crux of appellant's contention is that her change of mind warrants the withdrawal of the consents, it is within the court's discretion to disallow her request. Matter of P.A.W., 623 S.W.2d 592, 593-94 (Mo.App.1981). We find the trial court's judgment is supported by substantial evidence and this point is denied.
Appellant next claims that she did not knowingly permit the sexual abuse of the children. The term "knowingly permit" expresses "a knowing exposure of a child to reasonably anticipated abuse or a failure to protect a child from such abuse." In Interest of P.E.B., 708 S.W.2d 315, 319 (Mo.App.1986). Furthermore, children are owed a duty to be protected and to have their abuser reported. In Interest of P.E.B., 708 S.W.2d at 319; see also In Interest of S.D.S., 648 S.W.2d 351, 353 (Tex.App. 2 Dist.1983).
In her discussions with DFS workers and therapists, appellant admitted knowing that her husband had sexually abused the children. She told Dr. Henry Moore, a child psychiatrist, that she "had observed [the children] being abused or having their clothes taken off and things being done to them" by her husband. Dr. John Crane, a psychiatrist, testified that appellant told him that the children had been sexually assaulted by her husband. Appellant informed psychotherapist Ruth Mihevc that she left the children at home alone with her husband from a few hours to two days after having been assaulted by her husband. In appellant's own testimony before the court, she related an incident in which she believed her husband had sexually abused the girls. Appellant further testified that A. told her that the abuse was occurring, but that she chose not to act on the information.
We find that appellant knowingly permitted the sexual abuse of the children in that she admitted her knowledge and suspicions of the sexual abuse to various professionals and her own testimony corroborated that knowledge. Further, appellant's abandonment of the children to her husband's custody constituted impermissible condonation of the abuse. This point is denied.
Appellant next alleges that the trial court erred in admitting into evidence testimony about the boys' actions with anatomically correct dolls. She asserts that the reported actions constitute hearsay and should have been excluded.
Hearsay is a statement of another, reported in court by a witness, who offers it to prove the truth of the matter asserted therein. Giessow v. Litz, 558 S.W.2d 742, 750 (Mo.App.1977). The erroneous admission of evidence in a court-tried case rarely creates grounds for reversal. *54 Juvenile Office of Cape Girardeau County v. M.E.J., 666 S.W.2d 957, 960 (Mo.App. 1984). In the present case, the court did not rely on the testimony to prove that appellant or anyone had sexually abused the children. Rather, the court specifically admitted the testimony as corroborative evidence that the children had been sexually molested. Since the testimony was not used to prove the truth of the matter asserted, it was not hearsay and was admissible. M____ E____ E____ v. M____ E____, 715 S.W.2d 572, 574-75 (Mo.App.1986). This point is denied.
In her fifth point, appellant claims that she did not knowingly permit physical abuse to A., her eldest son, and that the allegation had not been pled by respondent. We note initially that the allegation was tried by consent of the parties in that appellant did not object to the introduction of the evidence. The pleading is therefore considered as amended to conform to the proof. Matter of Dunn, 620 S.W.2d 46, 48 (Mo.App.1981). Appellant's point of error regarding the pleading is denied.
Appellant testified that her husband repeatedly abused A., that she was present when beatings occurred, and that A. told her of the husband's abusive acts that occurred in her absence. Appellant described one occasion when her husband hit A. against a wall with such force that A. suffered a concussion and was unconscious for three days. Appellant also testified that her husband hurled A. through a glass window, necessitating hospitalization. Appellant testified that A. was constantly talking about the husband "hitting him all the time." Further, appellant testified that her husband "hit on all of us."
Based on appellant's testimony and her admissions to DFS workers and other professionals, she knowingly permitted repeated physical abuse to A. and took no steps to prevent future incidents. In Interest of P.E.B., 708 S.W.2d 315, 319 (Mo. App.1986). There is no evidence that appellant attempted to make a hotline report or to have her husband charged with child abuse. To the contrary, the evidence is that appellant would leave the children in the home with the husband after episodes of domestic violence. Where there is abuse to a sibling, courts have justified the removal of other children from the environment. D.G.N. v. S.M., 691 S.W.2d 909, 912 (Mo. banc 1985). The trial court's determination is supported by substantial evidence and this point is denied.
Finally, appellant alleges that there was no evidence to support the conclusion that it was in the best interests of the children to terminate her parental rights. In support of her point, appellant cites her love for her children, her efforts to gain self-sufficiency, and her efforts to provide them with adequate care and protection.
Love and good intentions are important considerations, but the controlling factor in determining whether reunification of the family is appropriate is the best interests of the children. In Interest of J ____ Y ____, 637 S.W.2d 670, 673 (Mo. banc 1982). Although the "best interests of the children" is an imprecise standard which relies on the subjective values of the judge, there was clear, cogent and competent evidence to support the court's decision. In Interest of P.E.B., 708 S.W.2d 315, 320 (Mo.App.1986); J.H.H. v. J.D., 662 S.W.2d 893, 897 (Mo.App.1983). The final point is denied.
The determination of the trial court is affirmed.
STEPHAN and SIMON, JJ., concur.
NOTES
[1] All statutory references herein are to RSMo Cum.Supp.1984.