## In the Interest of R.R.T.

### No. WD 39353.

Missouri Court of Appeals,
Western District.

Jan. 12, 1988.

---

Norman W. Lampton, Columbia, for appellant.

David B. Rogers, Columbia, for respondent.

Before KENNEDY, C.J., and
TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

R.R.T. is a female juvenile born on December 13, 1984. On December 14, 1984, R.R.T. was placed in protective custody upon the petition of a Boone County Juvenile Officer. A court hearing on January 25, 1985, resulted in R.R.T. being made a ward of the court and placed in the custody of the Division of Family Services ("DFS"). The parents, unmarried, have not had custody since the day after the child's birth. Termination of parental rights proceedings were filed August 7, 1986; both parents' rights were terminated on April 10, 1987. Both have filed separate appeals which have been consolidated before this court. The judgment is affirmed.

Under Missouri law, the termination of parental rights can be accomplished in two general ways. One is upon the notarized or witnessed consent of a parent. Section 211.444, RSMo 1986 (all statutory references are to RSMo 1986). Both of R.R.T.'s parents were found to have consented in writing to the termination of their parental rights by the order entered in this case. A second method is a finding upon a petition filed by the juvenile officer that it is in the best interest of the child as shown by clear, cogent, and convincing evidence that one or more grounds for termination exist. Among the grounds for termination and relevant here is the "failure to rectify" ground as contained in § 211.447.2(3):

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home.

In the determination under this subdivision the court is to consider the terms of a social service plan entered into between the parents and the Division, the success or failure of efforts to aid the parents in adjusting their circumstances or conduct to provide a proper home for the child, and mental conditions or chemical dependencies shown relevant to the care of the child. Section 211.447.2(3)(a)–(d).

Along with a consent to termination signed by both of R.R.T.'s parents, the petition in this case alleged that both parents had failed to rectify the conditions which led to the original assumption of jurisdiction. Specifically, the mother was alleged to be unable to care for herself or the juvenile in matters of health, hygiene, or nutrition; to lead a transient lifestyle; and to have had parental rights to another child terminated. The father was alleged to lead a transient lifestyle; to have an unstable employment history; to have made no financial contribution toward the care and maintenance of the child in foster care; and to have physically abused the mother and threatened future harm. The court found that termination of parental rights of the mother was in the best interest of the juvenile because the mother had consented in writing, and had not rectified the conditions which had led to the assumption of jurisdiction by the court with little likelihood of rectification at an early date.

Specifically, the mother was shown to not have the ability to take care of herself or the child in matters of health, hygiene or nutrition, to have failed to maintain stable housing, and to have had parental rights to another child terminated. Termination of parental rights of the father was found to be in the best interest of the juvenile for the same reasons: consent and failure to rectify. The court found the father was unable to maintain stable housing or employment and had made no financial contribution to the child's care. The court also found the Division had offered extensive services of which the parents had been unable or unwilling to avail themselves.

This court is constrained in its review of this decision on termination. The allegations made as supporting termination must be shown by clear and convincing evidence. *Santosky v. Kramer,* 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982); *In re J.D.K.,* 685 S.W.2d 876, 878 (Mo.App. 1984); § 211.447.2 RSMo Clear and convincing evidence is that evidence which: "instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.,* 681 S.W. 2d 452, 454 (Mo. banc 1984); *K.S. v. M.N.W.,* 713 S.W.2d 858, 860 (Mo.App. 1986). *Cf. In re J.D.K.,* 685 S.W.2d at 880 citing *Grissum v. Reesman,* 505 S.W.2d 81, 86 (Mo.1974) for the proposition that clear and convincing evidence is that which leaves the court clearly convinced of the proposition. This standard may be met even though the court has contrary evidence before it. *Adoption of W.B.L.,* 681 S.W.2d at 454. In the case at bar the father presented no evidence and the mother's attorney appeared without client. The decree should be sustained unless there is no substantial evidence to support it, it is contrary to the evidence or it erroneously declares or applies the law. *In Interest of M.E.W.,* 729 S.W.2d 194 (Mo. banc 1987). If any one ground of termination is supported by the evidence, the termination may stand. The separate appeals of the mother and father will now be addressed.

The mother first contends that the trial court erred in finding she had not rectified the conditions that led to the court assuming jurisdiction or that these conditions would not be remedied in the future. This contention is based on the purported lack of evidence as to the environment in which the mother lived from December, 1985, until the time the petition for termination was filed and through the time of the March 1987 hearing. The mother presented no evidence—she had moved to Joplin, Missouri, only her attorney was at trial. As to the mother's alleged inability to care for herself or the juvenile in matters related to health, hygiene or nutrition, the family's DFS caseworker from January, 1985 to July, 1986 testified of the mother's decision not to enter a residential program for families, and to periods of improvement and deterioration in the mother's personal hygiene. In addition, a vocational rehabilitation counselor who worked with the mother in 1986 testified to her observations of personal hygiene problems. Finally, the DFS worker for the period from July, 1986 to November, 1986 testified to a meeting with the mother when the mother had just had her head shaved because of head lice, inferring the possibility of an ongoing hygiene problem. Evidence of ongoing problems and the mother's inability or unwillingness to use services aimed at addressing the problems is sufficient to sustain the allegation.

Regarding the mother's alleged transient lifestyle and inability to obtain or maintain stable housing, the evidence was that the mother left Boone County and moved in with relatives in Vernon County. She and the father stopped living together in December of 1985 when the child was a year old. The record refers to the mother's allegations of a sister in this home assaulting her, the sister's husband attempting to rape the mother and actually raping another sister in the home. *D.E.J. v. G.H.B.,* 631 S.W.2d 113, 118 (Mo.App.1982).

The mother next alleges error in the finding that DFS had provided services to

make possible the return of the child. The evidence is contrary to this assertion. The testimony showed the mother was referred to a residential facility for families; she was provided with an aide for development of parenting, personal hygiene and housekeeping skills; she was referred for a disability evaluation; employment referrals were made; baby furniture was acquired; information was given on public housing and welfare; and visitation with the child was arranged and carried out. The parents complaining about the lack of services or token services misses the mark. A child is removed from his or her parent when deficiencies in the parent's ability or willingness to meet their responsibilities to the child are noted. The parent is then in the position of demonstrating his or her ability to correct these deficiencies. This is accomplished by conscientiously availing oneself of the services offered that should be reasonably calculated to correct the deficiencies. The evidence clearly shows this did not occur here. In the interest of the child, there must be a termination of the rights of the mother who after having the opportunity failed to assume parental responsibilities. This point on behalf of the mother is denied.

The mother's final point on appeal alleges error in the finding of her valid consent to termination. Section 211.444, RSMo allows termination upon written consent of the parent if it is in the best interest of the child. The written consent may be executed before or after the institution of the proceedings and shall be acknowledged before a notary or witnessed by two adults. Section 211.444.2. The evidence shows the mother executed two notarized consents in this case. In testimony concerning the execution of the consents, the DFS worker indicated she explained the meaning and consequences of the document, allowed plenty of time for questions and discussion, advised the mother to consult an attorney, and made no guarantees regarding adoption. The mother claims the consents were void because of duress, undue influence and fraud. Because no evidence supports

this claim, and because the evidence was that she signed freely and voluntarily, this point must be denied. *In the Interest of A.M.K.*, 723 S.W.2d 50, 53 (Mo.App.1986).

In sum, substantial clear and convincing evidence supports the trial court's conclusions that the mother of R.R.T. consented to the termination of rights as well as failed to remedy the conditions leading to the assumption of jurisdiction and that there was little likelihood of remedy in the foreseeable future. The order terminating the rights of the mother of R.R.T. is affirmed as being in the best interest of the child.

■ The father's first point on appeal concerns the finding that he consented to termination of his rights. Although he admits he signed the consent and he had a choice whether to sign the document, he argues he signed under false impression based on a conversation with R.R.T.'s foster mother. He testified he believed her philosophical statement that R.R.T. would be available for visits after adoption were promises. He purported to refute the consent after advice by counsel. The foster mother testified she had discussed her philosophy with the father, but that she informed him she could make no promises as to visitation and he would have no parental rights after they were terminated. Accepting the facts in light most favorable to the trial court's order, the consent was valid, *In the Interest of A.M.K.*, *supra*, at 53, and there was no error in denying the father's attempt to withdraw his consent. *In the Matter of P.A.W.*, 623 S.W.2d 592, 593–94 (Mo.App.1981).

■ The father's other pertinent point on appeal concerns the failure to remedy finding made by the trial court. Among numerous contentions made by the father is that no evidence was presented showing the conditions leading to the assumption of jurisdiction continued to exist. Instead, the father argues the evidence showed stable employment, stable housing and a stable family life. Testimony by the father urged

as supporting this view was that he had lived with a woman and her two children for four months prior to trial, and that he was working as a self-employed repair person bringing home $125 a week. The father married the woman the day before this trial began. This followed years of his living with others, on the streets and in shelters. Considered in the context of R.R. T. being in custody for over two years at the time of hearing, the trial court could easily have minimized or rejected this testimony. *See e.g., In the Interest of M.E.W.,* 729 S.W.2d 194, 196 (Mo. banc 1987). Furthermore, evidence relating to the visits with the child arranged by DFS for the father showed little or no reason to believe the father had or would change. The testimony was while affection was shown by the father, interaction and nurturing was often lacking, with the child often on the DFS worker's lap watching television. One of the concerns was the lack of a developing relationship at least in part because of the amount of activity at the visits unrelated to the parent-child relationship. The evidence sustains the sense of the court that the father was ill-equipped to parent R.R.T., and was unwilling or unable to make adjustments necessary to take on the role of parent. *In the Interest of M.E.W., supra,* at 197.

The father's contention that DFS failed to use reasonable, diligent and continued efforts to aid him in rectifying the conditions must be treated as the mother's similar contention and is rejected. The comment concerning the necessity of the parent demonstrating to DFS their ability to correct deficiencies is equally applicable. Where, as here, services are offered, but the parent does not avail himself of the opportunity the outcome is clear and the parent cannot complain.

Despite the parents' contentions as to the failure of DFS to follow its manual and procedures to reunite the child with them, the evidence is overwhelming that the parents made no attempt to avail themselves of parenting, housekeeping and job training. Despite the attempts of DFS to help the parents establish a stable home, keep themselves even relatively clean and to keep food for and feed the child, the parents did nothing. The mother's problem with head lice, the father's body odor being so intense as to attach to the little girl after she sat on his lap, leave no doubt as to the parents' ability to function as parents.

Again, giving due regard to the findings of the trial court, there is substantial clear and convincing evidence the father of R.R. T. consented to the termination of rights and has failed to remedy the conditions which led to the assumption of court jurisdiction with little likelihood of remedy in the foreseeable future. *In the Interest of M.E.W., supra,* at 195–96. The order terminating the rights of the father of R.R.T. is affirmed as being in the best interest of the child.

The trial court's judgment is in all respects affirmed.

All concur.