In the Interest of L.W., a child under
seventeen years of age.

B.M., Appellant,

v.

JUVENILE OFFICER OF DALLAS
COUNTY, Missouri,
Respondent.

No. 17715.

Missouri Court of Appeals,
Southern District,
Division One.

May 4, 1992.

Mel L. Gilbert, Buffalo, for appellant.
No appearance for respondent.

PARRISH, Judge.

This is an appeal from an order of the trial court finding that it had jurisdiction over L.W., a female child then eleven years old, by reason that the child was neglected and that the "child's environment and associations [were] injurious to her welfare." Sections 211.031.1(1)(a) and .1(2)(d).[1]

The trial court found that R.M., the child's stepfather, had sexually abused the child and that her mother, appellant, had neglected L.W. because appellant "refus[ed] or [was] unable to provide proper

care necessary for said child's well-being in that [appellant] ha[d] attempted to influence [L.W.] not to testify as to the facts in this matter, thus causing additional emotional trauma for said child." The trial court further found the child to be "in need of care and treatment which [could not] be provided by the parents"; "that all reasonable efforts to keep the child in the parent's home [had] not been successful"; and placed the child in the custody of the Division of Family Services. Section 211.181. This court affirms with respect to the finding of sexual abuse by R.M., reverses with respect to the finding of neglect by appellant, reverses as to the transfer of custody order and remands the case.

■ Appellate review of juvenile proceedings is in the nature of appellate review of court-tried civil cases. *C.R.K. v. H.J.K.*, 672 S.W.2d 696, 698 (Mo.App.1984). The trial court's order is the judgment from which this appeal was taken. Section 211.261, RSMo 1986; Rule 120.01. As such, it "will be sustained ... unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court "shall view the facts and the reasonable inferences therefrom in the light most favorable to the trial court's order." *In Interest of M.L.K.*, 804 S.W.2d 398, 400 (Mo.App.1991).

L.W. testified that she had gone on camping trips with her stepfather, R.M. L.W. and R.M. went by themselves on some trips. On others, appellant accompanied them. L.W. was asked if R.M. had touched her, during any of the camping trips, "anywhere that [she] considered improper." She answered, "Yes." She was then asked the following questions and gave the following answers:

Q. And did he—were you wearing pants—

A. Yes.

1. References to statutes are to RSMo Supp. 1990 unless stated otherwise.

Q. —when he touched you? And were you wearing panties, if you recall, underpants?

A. Yeah.

Q. And when he touched you did he put his hand inside your pants and inside your panties?

A. Yes.

Q. And did he touch you at all up on the upper part of your—in your chest area?

A. No.

Q. Just down there?

A. For about awhile till I told him to quit.

Q. You did tell him to quit that?

A. Yes.

Q. And did he quit it?

A. Yes.

L.W. testified that she was in her sleeping bag when the incident occurred. R.M. had been in his sleeping bag. Both were inside a tent. L.W. was asked, "So you believe that he had to get out of his sleeping bag in order to get to where you were?" She answered, "Probably." In response to a question asked, L.W. testified that "there [was no] light there to see if he was all the way out of his sleeping bag." L.W. told appellant what had happened "about a week later." Appellant told L.W., "If it ever happens again, we'll move away from him."

A friend of L.W., H.K., age ten, also testified. H.K. told about an event that occurred when she spent the night with L.W., in L.W.'s home, some time after the camping trip.[2] H.K. testified that she and L.W. were in a bedroom together; that it was "last summer"; that R.M. came into the bedroom. She estimated that "it was around either one or two o'clock" in the morning. She looked up and saw R.M. She was able to see him because there was light shining from the bathroom. H.K. was asked "what, if anything, he was wearing ... in the way of clothing." She answered, "Nothing." H.K. thought that he had come to get L.W. because L.W. wanted to sleep with her mother. L.W. had not been allowed to sleep with her mother when she first asked, but was told that she could later. When H.K. woke up, she asked R.M., "Did you come to get [L.W.]?" R.M. answered, "No, no." "[H]e just walked off."

H.K. testified that R.M. came back to the bedroom again. When he returned, H.K. could not see all of him but the part of his body that she could see "was naked." She did not know how much time had passed since R.M. was in the room before. She had fallen asleep. When H.K. woke up, R.M. was touching her. She moved her legs over "so he wouldn't touch [her]." R.M. went to L.W. "[L.W.] pulled the sheet over her because it was in the summertime." R.M. went back to H.K. She pulled the sheet over her and he left.

H.K. was asked about the clothing she was wearing. She gave the following answers to the questions asked:

Q. Now when you went to bed what were you wearing?

A. I was wearing some biker shorts and a tee shirt.

Q. Did you also have on underclothing, if you recall?

A. Yeah.

Q. Now when you woke up the second time, where was he? How far was he from you when you actually woke up and realized he was there?

A. (No response).

Q. In other words, was he this far (indicating) or was he standing right over you or where was he?

A. He was at the end of the bed and he was bending over.

Q. And what was the state of your clothes? In other words, had there been any changes in your clothes at that point when you woke up?

A. Well, the first time I woke up my pants were down.

Q. And you referred to these as biker shorts?

A. Uh-huh.

2. H.K. testified that she thought what she described occurred "before school." Appellant testified that the time H.K. spent the night with L.W. was in October.

Q. And did you say you had on under-clothing?

A. Yes.

Q. And what was—where were they at? Were they with the biker shorts?

A. Yeah.

Q. And your top was normal?

A. Yeah.

Q. And at that point did you or he either one say anything to each other when you realized that somehow your shorts had been taken down?

A. No, sir.

. . . . .

Q. Did he leave then at that point?

A. Yeah, but when he left—the second time when he came and he left then I got my—then I got my shoes on and my socks and I left and I ran home.

Q. How far do you live from there?

A. Probably about three houses down from the apartments.

Q. So you didn't like that situation?

A. No.

Q. And you went home in the middle of the night?

A. Yeah.

■ Appellant raises two points on appeal. In her first point, appellant claims that the trial court erred in finding that it had jurisdiction over L.W. and in removing the child from her home "[b]ecause the record was totally silent as to actions by [appellant] to influence [L.W.] not to testify."

The juvenile hearing was held on June 20, 1991. The trial court took the matter "under advisement." On July 18, 1991, the trial court filed its "Order of Disposition," the order from which this appeal was taken. The order included the following findings of fact:

The court after receiving evidence having found that the allegations of the petition were established in that pursuant to paragraph (d) of subdivision (2) of Subsection 1 of Section 211.031 RSMo., it is found that said child's environment and associations are injurious to her welfare in that on or about July, 1990, it is found that said child was sexually abused by her stepfather [R.M.] to wit: by touching and fondling her vaginal area. It is further found that pursuant to paragraph (a) of subdivision (1) of subsection 1., said child's mother, [appellant] is refusing or is unable to provide proper care necessary for said child's well-being in that [appellant] has attempted to influence [L.W.] not to testify as to the facts in this matter, thus causing additional emotional trauma for said child and that said child comes within the purview of Section 211.031 RSMo, and that therefore it had jurisdiction over the said juvenile, and the court having received further evidence concerning the need of said juvenile for care and treatment, and it being found that said juvenile are [sic] in need of care and treatment which cannot be provided by the parents. The Court finds that all reasonable efforts to keep the child in the parent's home have not been successful.

It also included the following disposition:

IT IS ORDERED that said juvenile be made a ward of this court and custody is placed with Division of Family Services.

The trial court's findings of fact, as required by §§ 211.181.1 and .2, are directed to the two allegations that are included in the petition upon which this case was tried. The petition alleged that L.W. was neglected by appellant and that L.W. was sexually abused by R.M. Appellant's first point is directed to the allegation of neglect. It alleges that appellant neglected L.W. by "refusing or [being] unable to provide proper care necessary for said child's well-being in that [appellant] ha[d] attempted to influence [L.W.] not to testify as to the facts in this matter, thus causing additional trauma for said child." The burden of proof that was required is prescribed by Rule 117.-05.b. "[T]he facts alleged shall be proved by clear and convincing evidence." *Id.*

L.W. was asked, "[H]as [appellant] ever said anything to you not to tell this story to anybody else or to talk to you to try to change your story." L.W.'s response was, "Huh-uh."

Appellant testified. She was asked the following questions and gave the following answers:

Q. Now the first thing I want to ask you about is that your daughter had testified that she had talked to you after this incident happened back in July of 1990.

A. No, she hasn't.

Q. When did she first talk to you about that?

A. It was in February.

Q. And at that time what type of words did you tell her at that time?

A. I said we'll take care of it. Let's see what we can do about taking care of it. We'll see what happens.

.    .    .    .    .

Q. Were there any type of words that you used to attempt to influence her not to proceed with these juvenile proceedings?

A. No.

The allegation in the petition that appellant attempted to influence L.W. not to testify was not proven. Appellant's first point is well-taken. The record on appeal is "totally silent as to actions by [appellant] to influence [L.W.] (juvenile) not to testify." As there is no substantial evidence that L.W. was neglected by appellant as alleged in the petition, the finding of neglect must be reversed.

■ Appellant's second point is directed to the allegation that L.W. was sexually abused by R.M. It is directed to H.K.'s testimony. Appellant contends that the trial court erred in admitting that testimony. Appellant argues that the testimony of H.K. was not relevant or material; that it was directed to events other than those the petition alleged R.M. committed.

■ Evidence of other sexual acts similar to an act that is the basis of a particular criminal charge is admissible in criminal cases to establish motive, intent, or the absence of mistake or accident. *State v. Mills*, 723 S.W.2d 68, 70 (Mo.App.1986). The same rationale that permits such other acts, or crimes, to be used in criminal cases to show intent, or the absence of mistake or accident, would be applicable in this case. R.M. is alleged to have sexually abused his stepdaughter. He testified at the juvenile hearing. He did not deny the acts that he is accused of committing. He claims, however, that if they occurred, the acts were unintentional, a mistake, or an accident.[3]

H.K. accuses R.M. of conduct similar to the conduct on the camping trip that R.M. claims could have occurred only by accident or mistake. H.K. accuses him of entering a bedroom in which she and L.W. were sleeping. H.K. testified that R.M. had touched her legs, the lower part of her body. When she moved away from him, he moved near L.W. When L.W. pulled the sheet from the bed over her, R.M. moved back toward H.K. H.K. pulled the bed clothing over herself. R.M. left. H.K. discovered that the shorts she was wearing and her undergarment had been pulled down.

H.K. and L.W. are similar ages. H.K. was ten at the time of the juvenile hearing; L.W. was eleven. The inference that may be drawn from H.K.'s testimony is that R.M. attempted to fondle H.K.; that she awoke as a result of his touching her in the course of his pulling down her shorts and undergarment; that he did those acts knowingly and intentionally. That conduct is sufficiently similar to the acts that oc-

---

3. R.M. acknowledged that he and L.W. had been camping alone. During the course of his testimony, R.M. was told, "[T]here's allegations that you had touched and fondled [L.W.] around her vagina area and she's testified to that effect." He was asked, "Do you believe that this incident occurred?" He answered, "I'm not going to call her a liar. If it occurred, I have no knowledge of it." R.M. was then asked, "Why don't you believe you would have any knowledge if it occurred?" He answered, "If I was asleep or

something or maybe just—a habit of sleeping with my wife or something. I don't know." Later in his testimony, R.M. was again asked, "But you say you think at the tent it might have happened, but you just don't remember. Is that your testimony?" His response was, "With [L.W.]?" The attorney said, "Yes." R.M. then stated, "I'm not calling my daughter a liar. I'm just saying I don't recall anything of that nature happening."

curred when L.W. was in the sleeping bag while on a camping trip with R.M. to negate his claim that if he committed such acts, they had to have been done unintentionally; that they could have been done only by mistake or accident; that he would not intentionally do such acts.

Arguably, the testimony of H.K. would be admissible to show absence of mistake or accident by R.M. However, this court is not required to make that determination. Even if the testimony of H.K. were inadmissible, its erroneous admission would not require reversal. *In Interest of A.M.K.*, 723 S.W.2d 50, 53 (Mo.App.1986); *In Interest of H.J.P.*, 669 S.W.2d 264, 272 (Mo.App. 1984); *Juvenile Office of Cape Girardeau County v. M.E.J.*, 666 S.W.2d 957, 960 (Mo. App.1984). In a court-tried case it is initially "well-nigh impossible to predicate reversal on the erroneous admission of evidence." *In Interest of H.J.P., supra.* The party who argues that a case should be reversed based on the erroneous admission of evidence must demonstrate the absence of sufficient competent evidence to support the trial court's decree. *Id.*

There was substantial evidence to support the finding of sexual abuse by R.M. The testimony of L.W. was sufficient to support that finding. The credibility of the witnesses was for determination by the trial court. On appeal, this court gives due regard to that determination. Rule 73.-01(c). There was substantial evidence that the child's environment and associations were injurious to her welfare and there was no erroneous application or declaration of law with respect to that issue. Appellant's second point is denied.

This court must, nevertheless, remand the case to the trial court for reconsideration of the disposition it entered. A disposition in a juvenile case is made only after there is a determination that a child comes within the court's jurisdiction. *See* §§ 211.-181.1 and .2. The trial court's order recited, after finding that it had jurisdiction over the child, that it "received further evidence concerning the need of said juvenile for care and treatment." The record on appeal, however, does not include any evidence that was presented for purposes of the trial court making its disposition. In view of the fact that the trial court's jurisdiction was predicated on both the erroneous determination of neglect—§ 211.031.-1(1)(a)—and the determination that L.W.'s environment and associations produced the incident of sexual abuse so as to be injurious to her welfare—§ 211.031.1(2)(d)—and that there is otherwise an absence of evidence concerning the child's needs, the trial court must, upon remand of this case, reconsider the disposition originally entered. In so doing, the trial court shall disregard any effect that the prior erroneous determination that appellant was neglectful may have had in the determination of the original disposition. Whether it is necessary to receive additional evidence for purposes of arriving at a new disposition in this case is left to the trial court's sound discretion.

In view of the fact that the trial court must again review this case, its attention is directed to the requirement of § 211.183.1. That statute requires an order of disposition to "include a determination of whether the division of family services has made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home." Although the trial court, in its prior order of disposition found that reasonable efforts to keep the child in her mother's home had not been successful, there was no finding entered that was consistent with the language of § 211.183.1, i.e., that the division of family services had made the required reasonable efforts. There is a distinction in finding that whatever reasonable efforts were made were unsuccessful and finding that sufficient reasonable efforts were made. Further, such a finding must "rest on substantial evidence." *In Interest of A.L.W.*, 773 S.W.2d 129, 134 (Mo.App.1989).

The finding that the trial court had jurisdiction over L.W. under § 211.031.1(1)(a) is reversed. The finding that the trial court had jurisdiction over L.W. under § 211.-031.1(2)(d) is affirmed. The order that transferred custody is reversed and the case is remanded for determination and entry of a disposition order that is consist-

ent with the factors identified in this opinion and such other evidence as the trial court may, in its discretion, consider.

PREWITT, P.J., and CROW, J., concur.