

# Missouri Court of Appeals

## Southern District

### Division One

IN THE INTEREST OF Z.M.W., Z.J.C., )
Z.J.C., Z.E.L.C., and Z.D.C.D. )
  )
A.W. and R.J.W., )
  )
     Appellants, )
  )
v. )  Nos.  SD33962, SD33963,
  )        SD33964, SD33965,
Laclede County Juvenile Office, )        and SD33966, consolidated
  )
     Respondent. )  **Filed: July 19, 2016**

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable Stan Moore

**APPEALS DISMISSED**

R.J.W. ("Mother") and A.W. ("Father") (collectively, "Parents") are attempting to

appeal disposition judgments entered in May 2015 by the Juvenile Division of the Circuit

Court ("the trial court") that rested on the trial court's assumption of jurisdiction over

Parents' children ("Children") under section 211.031.1(1) ("jurisdiction orders") and

placed Children into the legal and physical custody of the Children's Division ("the

Division").[1]  The jurisdiction orders were entered after combined adjudication hearings,

---

[1] Although Parents' jurisdictional statement fails to identify what authority permits juvenile jurisdiction orders to be appealed, this Court has appellate jurisdiction based on section 211.261. *In Interest of L.W.*,

and we have consolidated the resulting appeals for all purposes.[2]  Parents' two points on

appeal contend:  (1) the trial court's finding that Parents "abused or neglected Z.M.W. . . .

was against the weight of the evidence"; and (2) the trial court failed to make the findings

required to assume jurisdiction over Children and remove them from their home.

Because the trial court subsequently dismissed the cases in which the jurisdiction orders

were entered and terminated its jurisdiction over Children, we dismiss Parents' appeals as

moot.

## Evidentiary and Procedural Background

The evidence presented at the consolidated adjudication hearing, as viewed in the

light most favorable to the jurisdiction orders, *see In re N.J.B.*, 327 S.W.3d 533, 537

(Mo. App. S.D. 2010), was as follows.

On February 24, 2015, Z.M.W. was about nine weeks old.  R.J.W. took the infant

to the doctor because she "had fussed" earlier in the day when her arm was moved.  A

pediatric orthopedic surgeon, Dr. Jeremy David Onnen, examined Z.M.W. that day and

saw from "a radiographic skeletal survey" that her "right forearm had a mid-shaft radius

fracture[.]"  The skeletal survey also showed multiple rib fractures that had healed.  The

doctor "did not see on the skeletal survey any thin diaphyseal bones indicating any brittle

bone type diseases."  Another pediatric orthopedic surgeon, Dr. Elizabeth Engel,

examined Z.M.W. in March 2015 and opined that Z.M.W.'s injuries "were secondary to

nonaccidental trauma."  A pediatric radiologist, Dr. Shannon Farmakis, had reviewed

830 S.W.2d 885, 886 (Mo. App. S.D. 1992).  The child identified as "Z.D.C.D." on appeal is also referred to in the transcript and some materials in the legal file as "Z.D.C." and the two children both identified with the initials as "Z.J.C." have different names.  All references to section 211.031 are to RSMo Cum. Supp. 2013.

[2] A.W. testified that he is the natural father of Z.M.W. and the stepfather of the other four children; Mother testified that she is the natural mother of Children.  Two other individuals, J.D., the putative natural father of Z.D.C.D., and R.C., the putative natural father of Z.E.L.C., Z.J.C., and Z.J.C., were represented by counsel at the combined disposition hearing, but they did not file briefs in the consolidated appeals.

2

materials in the case, and she observed that Z.M.W.'s "bone mineralization was completely normal." She opined that "the most likely cause of these fractures would be nonaccidental trauma."

A.W. testified that "during the weeks leading up to [Z.M.W.'s] injuries[,]" no one other than himself, R.J.W., and the other Children had access to Z.M.W. When an investigator for the Division, Tina Clancey, first spoke with Parents, they indicated "that they just didn't know what happened." R.J.W. had seen a video[3] of an interview of Z.E.L.C. in which Z.E.L.C. "said that [A.W.] hurt the baby's arm on purpose."

Three days after the discovery of Z.M.W.'s injuries, Respondent filed petitions asking the trial court to assume jurisdiction over Children based on Z.M.W.'s injuries and the danger the actions that led to those injuries posed to Z.M.W.'s siblings. The petitions alleged that Z.M.W. had been "released from the hospital with a diagnosis of injury as the result of child abuse." Paragraph 5 of each petition further alleged:

> Investigation by law enforcement is on-going but there is evidence tending to indicate that some or all of the injuries may have been caused by [A.W.] and that [R.J.W.] was aware of the actions of [A.W.] and that [Z.M.W.] was in pain but failed to protect the infant or seek prompt medical treatment. There is no evidence to indicate the injuries occurred other than when [Z.M.W.] was in the physical custody of [Parents].

At the conclusion of the April 2015 adjudication hearing, which involved the testimony of 13 witnesses, including a medical expert witness who testified on behalf of Parents, the trial court stated:

> The clear and convincing evidence in this case leads me to believe that [Z.M.W.] did suffer from abuse and . . . it happened while [Z.M.W.] was in [Parents'] care. I have to consider the credibility of the evidence, and the credibility takes me there.

---

[3] This court granted Respondent's "MOTION TO SUBMIT EXHIBIT OUT OF TIME" to include in the record on appeal the video interview, which was viewed and relied on by the trial court during the consolidated hearings.

> Therefore, I'm finding that the allegations in the petition[s] are true by clear and convincing evidence and that [Children] come within the provisions of the juvenile code and under the jurisdiction of the juvenile court.

The trial court thereafter entered its findings of fact and conclusions of law "that the allegations contained in paragraph 5 of the pleadings are true[.]"

The trial court granted Parents' counsel's request for "time to prepare for" the disposition hearing and continued that portion of the hearing to May 2015. At the disposition hearing, the trial court overruled Parents' motion to reopen the adjudication portion of the cases, and when asked whether it would "be willing to reconsider that after the visit to [another medical expert]?" the trial court stated, "I don't know. It all depends on what the report is." The jurisdiction orders were entered two days after this hearing, and Parents timely filed their notices of appeal.[4] *See* section 211.261.1.[5]

### Analysis

Before we address the merits of Parents' appeals, we must first consider whether they are now moot. *In Interest of J.T.S.*, 462 S.W.3d 475, 477 (Mo. App. W.D. 2015). "An appellate court is not permitted to review moot claims of error." *Id.* Although we may look outside the record in order to consider mootness, *id.* at 478, Parents and Respondent agree in their briefs that the trial court has terminated its jurisdiction over Children. Based on that agreement, we consider that status as if it appears in the record. *See Rogers v. Hester ex rel. Mills*, 334 S.W.3d 528, 541 (Mo. App. S.D. 2010).

---

[4] After the clerk of this court sent two notices to Parents' counsel regarding the impending dismissal of the appeals, the appeals were dismissed for failure to perfect them. The cases were restored to the active docket after Parents moved to set aside the dismissals.
[5] RSMo 2000.

After Parents filed their brief in April 2016, Respondent filed a "MOTION TO DISMISS APPEAL" ("the dismissal motion") that included the five appellate case numbers but was styled "IN THE INTEREST OF Z.E.L.C." and did not otherwise reference any other children. The dismissal motion stated that the trial court had terminated its jurisdiction in November 2015 and had "place[d] *the juvenile* back in the custody of [Parents] after a trial home placement which began in August of 2015." (Emphasis added.) The dismissal motion incorporated exhibits, each entitled "**Motion and Order for Termination of Jurisdiction**[,]" over Children.[6] Parents filed suggestions in opposition to the dismissal motion "deny[ing] that the appeal is mooted by the termination of jurisdiction" and the motion was denied.

In response to Parents' second point on appeal, Respondent contends, among other things, that Parents' challenge to the adequacy of the trial court's findings "should be denied as being moot." Respondent states that "[t]o remand these cases at this time will accomplish nothing as a practical manner as ultimately the final disposition in these cases has been in [Parents'] favor as [Children] have been returned to [Parents] and the cases closed." Respondent's appendix includes five motions with orders terminating the trial court's jurisdiction over Children.

In their reply brief, Parents state: "While it is true that [Children] have been returned to their home and the trial court terminated jurisdiction over them, this Court should review this matter as an exception to the mootness doctrine, should it find this appeal moot."

---

[6] Respondent stated in the motion that a "trial home visit has gone well and [Parents] have cooperated in accepting services. At this time there are no other services needed and there are no concerns with terminating jurisdiction over the juvenile." The order terminating jurisdiction was incorporated at the bottom of the motion.

5

Parents claim a mootness doctrine exception is appropriate because the trial "[c]ourt's utmost compliance with the statues in assuming jurisdiction over and removing children from their parents is a matter of utmost public policy, is likely to evade appellate review if the Court does not exercise its review, and will recur." "However, a desire for personal vindication does not rise to the level of a general public interest[,]" ***J.T.S.***, 462 S.W.3d at 480, and Parents do not demonstrate that the points they present frame significant recurring public policy concerns likely to evade review.

Point 1 claims the trial court's findings are against the weight of the evidence. Such a claim is not sufficient to establish a public interest exception to the general prohibition against reviewing moot claims. *C.f.* ***In re J.L.R.***, 257 S.W.3d 163, 166 (Mo. App. W.D. 2008) (a challenge to the sufficiency of the evidence is insufficient to demonstrate an issue of general public interest and importance that would otherwise evade appellate review). Regarding Point 2,[7] Parents argue in their reply brief that this point could permit this court to "logically find that [Parents] were deprived of due process" due to alleged procedural deficiencies in an affidavit by Ms. Clancy that Parents claim as the "only 'findings'" by the trial court. Parents then assert that "they were not granted due process because there was no family preservation screening conducted by [the] Division pursuant to §211.180[.]" Because neither of these claims are contained in Point 2, they are not preserved for appeal. ***Chipperfield v. Mo. Air Conservation Comm'n***, 229 S.W.3d 226, 237 (Mo. App. S.D. 2007).

---

[7] Point 2 states in its entirety, "The [trial court] erred in failing to make requisite findings in assuming jurisdiction and removing [Children] from [Parents] in its Findings of Fact and Conclusions of Law and Judgment and Order of Disposition Regarding Abuse/Neglect."

6

Parents also argue that "there are collateral consequences and ongoing injury to [Parents]" that merit an exception to a dismissal for mootness. Parents describe these harms as

> including the right to participate in the educational and extracurricular activities of their six [sic] children because of being marked as 'child abusers' and lost career opportunities with the U.S. Army for [A.W.; moreover,] those lost career opportunities, including being denied promotions and possibly being discharged, will affect the entire family in incalculable ways, including but not limited to their income and housing.

Parents provide us with no support for their alleged harms, and other such "bare assertions about speculative future consequences" have been rejected.[8] *J.T.S.*, 462 S.W.3d at 480-81 (citing *J.L.R.*, 257 S.W.3d at 166).

Parents have failed to convince us that an exception to the mootness doctrine is applicable. The consolidated appeals are dismissed.

DON E. BURRELL, J. – OPINION AUTHOR

JEFFREY W. BATES, P.J. – CONCURS

MARY W. SHEFFIELD, C.J. – CONCURS

---

[8] Parents' further argument that if they won on the merits of the appeal, "they will have another opportunity to seek to have their names removed from the Child Abuse and Neglect Family Care Registry Board because the Adjudication will have been reversed and the clock restarted[,]" does not demonstrate on the record before this court that they had no opportunity to challenge any such placement in the registry nor that decisions on the merits of the specific points raised on appeal would change procedural or substantive matters governing Parents' placement in the registry.