**In the Interest of K.L., C.L. and R.L.**

Nos. WD 54175, WD 54380.

Missouri Court of Appeals,
Western District.

April 28, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

Patrick Andrew Woodley, Jeffrey Adams, Clinton, for appellant.

James Switzer, Clington, for respondent.

SPINDEN, Judge.

The parents of K.L., C.L. and R.L., file separate appeals of the circuit court's judgment to terminate their parental rights. We affirm the circuit court's judgment.

The couple married on April 1, 1988. They gave birth to K.L. on March 25, 1989; to C.L. on February 9, 1990; and to R.L. on November 8, 1991. On January 28, 1992, the

Division of Family Services (DFS) removed the children from the care of their mother on the ground of neglect. The father was incarcerated, and he remained in prison until October 1, 1992.

On March 13, 1992, the circuit court determined that the children had been neglected, but it ordered that they be returned to their mother's custody under DFS' supervision. In June 1992, the mother signed a service agreement to rectify her failings in caring for the children, but, on September 2, 1992, the circuit court ordered removal of the children from her custody because of her alleged lack of participation in DFS services and because of the unsanitary conditions of her residence. The circuit court ordered that the children be placed in the custody of their paternal grandparents under DFS' supervision. After the mother signed another service agreement in November 1992, the circuit court ordered, on April 15, 1993, that the children be returned to their mother's custody. Their father had been released from prison, but the record does not indicate that he returned to his wife's residence.

On May 18, 1993, the circuit court again removed the children from their mother's custody and placed them with the paternal grandparents because of her alleged failure to enroll one child in school, refusal to obtain proper medical attention for the children, and failure to cooperate with DFS or the court. The mother signed more service agreements in July 1993 and in March 1995. On March 31, 1995, the circuit court ordered that DFS assume custody of the children but that placement remain with the grandparents.

The mother and father divorced sometime in 1993, but they cohabitated four to five separate periods between March 1995 and July 1996. The grandparents requested removal of the children from their care because of their failing health. On January 11, 1996, the circuit court placed the children in foster care under DFS' supervision. In February 1996, the mother and father signed a service agreement, but DFS terminated the agreement in March 1996 because DFS workers had difficulty finding the couple at home and

because they failed to participate in a parental aid program.

On July 10, 1996, the juvenile officer petitioned the circuit court to terminate the couple's parental rights. The circuit court held a hearing on January 21, 1997. Both parents testified and presented witnesses. On March 3, 1997, the circuit court entered its judgment to terminate their parental rights. Each parent appealed individually. We have consolidated their appeals.

 The General Assembly has mandated in § 211.447.2[1] that, before a circuit court can terminate parental rights, it must determine that termination is in the child's best interest and that the juvenile officer has established, by "clear, cogent and convincing evidence," one of the enumerated grounds for termination. Clear and convincing evidence "instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and [leaves] the fact finder's mind ... with an abiding conviction that the evidence is true." *In re Adoption of W.B.L.*, 681 S.W.2d 452, 454 (Mo. banc 1984). The grounds enumerated include abuse or neglect of the child, § 211.447.2(2), and that the condition which caused the circuit court to put the child in protective custody has continued for more than one year with little likelihood of being remedied soon, § 211.447.2(3). The circuit court terminated the couple's parental rights on both these grounds.

The mother contends that the juvenile officer did not meet her burden of establishing by clear, cogent and convincing evidence that DFS made a diligent effort to aid her in rectifying the conditions which led to the court's adjudication of neglect. She argues that she "has not had the benefit of a diligent effort by DFS or the Juvenile Office to rectify the conditions which caused the children to come under the jurisdiction of the Juvenile Court." She complains that her first case worker demanded so much that she "wound up in the stress unit of the local hospital" and that case workers and parent aides scheduled meetings which conflicted with her work schedule and thwarted her plans to move to another town to improve living conditions for

---

**1.** All citations to statutes refer to the 1994 Revised Statutes.

her children by threatening to remove the children from her custody. She contends that, because she has a stable job and plans to remodel a mobile home for her and her children, she is entitled to more time to demonstrate that she can rectify her shortcomings. The record does not support her point.

The mother does not cite any statutes or case law as authority for placing on DFS the burden for which she contends. In § 210.001(2), the General Assembly obligated DFS to "[ensure] that appropriate social services are provided to the family unit both prior to the removal of a child from the home and after family reunification[.]" Responding to similar arguments, we have said:

> The parents['] complaining about the lack of [DFS] services or token services misses the mark. A child is removed from his or her parent when deficiencies in the parent's ability or willingness to meet their responsibilities to the child are noted. The parent is then in the position of demonstrating his or her ability to correct these deficiencies. This is accomplished by conscientiously availing oneself of the services offered that should be reasonably calculated to correct the deficiencies.

*In the Interest of R.R.T.*, 744 S.W.2d 829, 832 (Mo.App.1988). This court's Southern District has drawn the same conclusion:

> [Appellant] argues in her briefs that the system failed her and that DFS could have done more to effect reunification by providing other forms of assistance. There is no statutory right, however, to a certain level or standard of DFS treatment and services in a termination proceeding. *In re N.D.*, 857 S.W.2d 835, 840 (Mo.App. 1993). The failure of DFS to provide treatment or services to a parent is not a valid defense for use by the parent in a termination proceeding. *Id.*

*In the Interest of A.K.L.*, 942 S.W.2d 953, 960 (Mo.App.1997).

This record establishes that DFS did not fail in its obligation to help the mother with "appropriate social services." DFS' workers began trying to reunite the mother with her children in March 1992. Their effort continued through July 1996 when the juvenile officer filed the petition to terminate her parental rights. Eight times during that period, DFS workers prepared service agreements delineating specific, reasonable goals for her to achieve to regain custody of her children. DFS assigned a case worker and a parent aides to help her achieve the goals.

Each time, the mother failed to meet the goals. She failed to meet with parent aides, to cooperate with social workers, and to attend counseling sessions. She resided at 25 different locations between 1991 and January 1997, and case workers and parent aides often had to "track her down" to talk to her. Even though she had a regular job and agreed to pay $30 a month to support her children, she paid nothing. Each time the circuit court returned the children to her custody it removed them after a brief time because of her failure to meet minimum standards in caring for her children. The mother's point is without merit.

■ The father contends that the circuit court erred in terminating his parental rights because the grounds found by the circuit court could not have applied to him—he was in prison when the court determined that his wife had neglected the children. He argues that the circuit court did not have sufficient evidence that he caused the conditions to persist when he returned from prison.

■ The father's contention on this point is unfounded. The circuit court found cause to terminate his parental rights under § 211.447.2(2) for neglect. This statute requires the court to make findings concerning four conditions relating to parental acts,[2] but

---

2. Section 211.447.2(2) states as grounds for termination of parental rights, "The child has been adjudicated to have been abused or neglected. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following conditions or acts of the parent: (a) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control; (b) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control of the child and which cannot be

proof of one is sufficient to establish cause for termination. *In the Interest of S.C.*, 914 S.W.2d 408, 411 (Mo.App.1996). In its findings of fact, the circuit court decided that no evidence supported a finding of cause for termination under § 211.447.2(2)(b) for chemical dependency or under § 211.447.2(2)(c) for acts of physical, emotional or sexual abuse. The circuit court did find cause for termination under § 211.447.2(2)(a) concerning mental condition. The circuit court found, "[Father] for a lengthy period of time has suffered from and currently suffers from an anti-social personality disorder and a [histrionic] personality disorder which inhibits his ability to provide care, custody and control of the minor children."

The father argues that this finding did "not rise to the legal requirement of § 211.447.2(2)(a) in that there was no evidence or finding that father had a mental condition which rendered him unable to *knowingly* provide the minor children the necessary care, custody and control."[3] We disagree; the juvenile officer did meet the requirements of § 211.447.2(2)(a). The statute did not require a showing that the father acted "knowingly," and the juvenile officer established that the father suffered a mental condition which kept him from providing for his children. A licensed psychologist working with the father from December 11, 1995, through October 18, 1996, related specific examples of the father's behavior which fulfilled the criteria for the mental conditions noted by the court. The psychologist testified that the father exhibited an anti-social personality. He noted that the father habitually disregarded the wishes, needs and wants of others; he was deceitful; he manipulated others to achieve his own ends; he was aggressive and abusive toward his family; he was frequently irresponsible concerning employment; and he lacked remorse or exhibited indifference for others. Regarding the father's histrionic personality disorder, the psychologist noted his grandiose statements regarding money-making skills and employment. We find no merit in the father's point.

■ As to the standard in § 211.447.2(2)(d), the circuit court said:

> The Court does find that there has been repeated and continuous failure by the parents, although physically and financially able, to provide the children with the adequate food, clothing, shelter and education as defined by law, or the care, custody and control necessary for their physical, mental and emotional health and development. [Both parents] complain their financial circumstance prevents them from supporting the minor children. While [each parent has] had a sporadic work history, they have had, at all times, the physical ability and the financial ability to provide the financial support, even in a minimal fashion, to the minor children, but did not do so.... [Father] testified he was self-employed in an auto parts business with 14 employees and he was making $50 to $150 daily. Despite the provision of the written service agreement of February, 1996, to provide $30 per month support to their minor children, [the parents] failed to do so. [Mother] testified [father] controlled her money, and [father] testified while he had the ability to make support payments, he refused to do so through the "system."

The father contends that, because he invited his parents, who had custody of his children at the time, to live with him from August 1994 through October 1995, the circuit court's finding that he did not support his children was wrong.

Section 211.447.2(2)(d) delineates a "repeated or continuous failure" of a parent to

---

treated so as to enable the parent to consistently provide such care, custody and control; (c) A severe act or recurrent acts of physical, emotional or sexual abuse toward the child or any child in the family by the parent, including an act of incest, or by another under circumstances that indicate that the parent knew or should have known that such acts were being committed toward the child or any child in the family; or (d) Repeated or continuous failure by the parent, although physically or financially able, to provide the child with adequate food, clothing, shelter, or education as defined by law, or other care and control necessary for [the child's] physical, mental, or emotional health and development[.]"

**3.** We added the emphasis.

provide support for his or her child as a ground for termination of parental rights. Even if the father's contributions from August 1994 through October 1995 constituted support, the father offered no evidence of any other financial support for the children from January 28, 1992—when the children were first removed from the home—through the termination hearing in January 1997. The father admitted that he did not pay any support when the mother had custody of the children.

Even if he was unable to pay for all of his children's financial needs, he had a duty to contribute as much as he could. *In Interest of S.J.G.*, 871 S.W.2d 638, 642 (Mo.App.1994). He acknowledged that he understood his parental rights could be terminated for not paying child support, but he refused to pay, he said, because he did not want to participate in "the system." The circuit court properly determined cause for termination under § 211.447.2(2)(d).

The father also challenges the circuit court's termination of his parental rights pursuant to § 211.447.2(3). Because we have already determined that the circuit court had a sound basis for terminating his parental rights pursuant to § 211.447.2(2), we need not address whether the circuit court determination concerning § 211.447.2(3) was proper.

■ The father also complains that the circuit court erred in overruling his two *pro se* motions for a new trial. He avers that his motions should have been granted because he established that his lawyer was ineffective. He accuses his lawyer of not calling favorable witnesses.

In a letter to the circuit court on January 30, 1997, nine days after the hearing but before the circuit court's decision, the father contended that his lawyer was inadequate because he did not call a witness who would have testified of "the personal history about my care of the children" and two others from "Family Service and West Central community action agency" in Warsaw who had "knowledge of the care I gave to my Children." The letter did not identify the witnesses or state how their testimony would have rebutted the juvenile officer's alleged

grounds for terminating the father's parental rights. The circuit court denied this motion on February 3, 1997.

The father filed a second letter with the circuit court on March 28, 1997, and again alleged that his attorney did not call favorable witnesses. He averred that, had the witnesses been called, the circuit court "would have had a better [view] on me as a good parent because two of the witnesses worked for DFS in Warsaw." The circuit court did not rule on this request for a new trial. Under Rule 81.05(a), the judgment became final 90 days after the filing of the motion.

■ A parent subject to termination of parental rights proceedings is entitled to a lawyer's assistance. If the parent cannot pay for a lawyer, § 211.462.2 requires the circuit court to appoint one. Section 211.462.2 impliedly guarantees effective representation by the lawyer. *In the Interest of J.C., Jr.*, 781 S.W.2d 226, 228 (Mo.App.1989). A lawyer's representation is effective if the lawyer's assistance provided a meaningful hearing. *In the Interest of F.N.M.*, 951 S.W.2d 702, 707 (Mo.App.1997).

In this case, the father's attorney actively participated in the hearing, cross-examined witnesses, objected to testimony, and called as a witness the father's mother, who was the primary custodian of the children. The record suggests that the lawyer's assistance provided the father with a meaningful hearing. The circuit court did not err in overruling his motion. His complaints about the denial of his motion for a new trial and the effectiveness of his lawyer are without merit.

■ The attorneys representing the mother and the father have asked this court to award them attorney fees for perfecting this appeal as court-appointed attorneys. Section 211.462.4 authorizes taxing a private party or agency, a state agency, or a county for attorney fees for a court-appointed attorney's trial and appellate work in termination of parental rights cases. *In the Interest of Y.M.H.*, 817 S.W.2d 279, 287 (Mo.App.1991). Award of attorney fees is a matter of discretion for the circuit court, *id.*; therefore, we

remand this case to the circuit court to consider the attorneys' motions.

We affirm the circuit court's judgment to terminate the mother's and the father's parental rights. We remand the motions for attorney fees to the circuit court for its determination.

BRECKENRIDGE, P.J., and LOWENSTEIN, J., concur.