**In the Interest of J.W. and
D.T.M, Plaintiffs.**

**Juvenile Officer, Respondent,**

v.

**S.W.J. (Natural Mother), Appellant.**

**No. WD 56575.**

Missouri Court of Appeals,
Western District.

Submitted Sept. 9, 1999.

Decided Nov. 30, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2000.

Application for Transfer Denied
March 21, 2000.

William M. Shansey, Columbia, for Appellant.

Elizabeth K. Magee, Columbia, for Respondent Juvenile Officer.

Mary H. Moore, Asst. Pros. Atty., Boone County, Columbia, for Respondent.

Before ALBERT A. RIEDERER, P.J.; JAMES M. SMART and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, Judge.

S.W.J. ("Mother"), appeals an order terminating her parental rights with regard to her two children, J.W. and D.T.M., who were ages five and six at the time. The court terminated Mother's parental rights on September 11, 1998, on the ground of

abandonment, pursuant to § 211.447.2(1), RSMo Supp.1997.[1] Mother contends that the decision to terminate her parental rights was against the weight of the evidence because the Department of Family Services ("DFS") failed to provide clear, cogent and convincing evidence that Mother had abandoned the children. Further, Mother alleges that DFS failed to show that termination was in the best interests of the children. Mother complains that the trial court did not make specific factual findings as required under § 211.447.3. She also argues that she has repented and ended the abandonment so the grounds to terminate no longer exist.

Affirmed.

## Factual Background

On September 12, 1995, Mother left J.W. and D.T.M. in the care of a friend because Mother was being incarcerated in the Boone County Jail. On September 15, 1995, Mother's friend called DFS and informed it that she could no longer care for the children, because, among other reasons, her electricity had been shut off. DFS placed the two children in protective custody on September 16, 1995, and they have been in the custody of DFS since that time.

On August 20, 1997, a petition for termination of parental rights was filed by the juvenile officer, alleging that Mother had abandoned the children. A hearing was held on September 10, 1998. At the hearing, various witnesses testified as to Mother's numerous attempts at treatment to overcome her crack cocaine addiction. There was also testimony of Mother's being incarcerated twice during the period that her children were in the custody of DFS.

A witness for the juvenile officer, a drug treatment therapist, testified that she believed Mother could successfully overcome her drug habit and that Mother's attempts to do so are evidence that Mother wishes to do what it takes to regain custody of her children. The counselor also stated that overcoming an addiction to crack cocaine often requires numerous attempts at treatment.

Additional testimony at the hearing revealed that from the time the children were taken into protective custody in September 1995, until the petition for termination was filed in August 1997, Mother had visited her children on just ten occasions, with only three visits after August 1996.

Although there was testimony that Mother occasionally checked in with the Morgans (the children's caretakers) to ask about the children, the DFS worker testified that Mother did not ask to speak with the children when she called. The DFS worker also testified that Mother neglected to contact the children on birthdays or holidays. Mother testified that she had given money to the Morgans for the children's care. The DFS worker stated that Mother had never contributed financially towards the care of her children while they were under the supervision of DFS.

Following is a chronology of Mother's visits with the children and her numerous attempts at drug treatment.

**Time Line:**

| | |
|---|---|
| Sept. 12, 1995 | Mother incarcerated |
| **Sept. 16, 1995** | **DFS takes children into its custody** |
| Sept.1995 – Aug. 1996 | 7 visits with children during this year |
| Jan.1996 – Sept. 1996 | 3 incomplete attempts at drug treatment |
| September 20, 1996 | Visit with children |
| Oct.1996 & Jan. 1997 | 2 incomplete attempts at treatment |
| Feb. 3 & 11, 1997 | 2 visits with children – Valentine's Day gift to children |
| March 1997 | Visit with children |
| March 1997 | Inpatient treatment Hannibal Ctr-completed successfully |
| May 1997 | Incomplete attempt at drug treatment |
| June 29 1997 | Mother incarcerated |
| Aug. 7, 1997 – Nov. 1997 | Mother incarcerated – 4 months |
| **August 22, 1997** | **Petitions for termination of parental rights filed** |
| September 8, 1997 | Incomplete attempt at drug treatment |

1. All statutory references are to RSMo Supp. 1997, unless otherwise noted.

On September 11, 1998, the Boone County Family Court terminated Mother's parental rights on the ground of abandonment pursuant to § 211.447.2(1), stating, as to both children, that the termination was in their best interests and that the statutory requirements for abandonment had been shown to exist.

Mother appeals.

## Standard of Review

 On an appeal of a termination of parental rights order, the appellate court views the facts and all reasonable inferences arising therefrom in the light most favorable to the trial court's order. *In Interest of T.T.*, 954 S.W.2d 429, 431–32 (Mo.App.1997). We will affirm the trial court's order unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Rule 73.01; *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## Abandonment

Mother's first and primary point on appeal is that the decision to terminate her parental rights was against the weight of the evidence in that DFS failed to show by "clear, cogent and convincing evidence" that Mother had actually abandoned her children. She further argues that DFS had failed to show that termination was in the best interests of the children.

 A parent's rights may be terminated on the ground of abandonment only if the party seeking to terminate can prove: (1) that there is "clear, cogent and convincing" evidence that the child has been abandoned by the parent; and (2) that it would be in the child's best interest to terminate the parental rights, as required by § 211.447. *See In Interest of S.H.*, 915 S.W.2d 399, 403 (Mo.App.1996). "Clear, cogent and convincing evidence" is that evidence which "instantly tilts the scales in the affirmative" and leaves the fact finder's mind "with an abiding conviction that the evidence is true." *Id.* (quoting *In Interest of C.K.G.*, 827 S.W.2d 760, 765 (Mo.App.1992)). This test may be met despite the presence of contrary evidence before the court. *Id.*

Mother argues that the juvenile officer has not met the burden of proving that Mother has abandoned her children as required by the statute. Section 211.447.2(1)(b),[2] under which the petition was brought, provides that a child has been abandoned if, at the time of the petition, the parent has left a child over one year of age for a period of greater than six months with no provision for parental support and without making arrangements to visit or communicate with the child, without good cause, even though the parent has been able to do so. § 211.447.2(1)(b), RSMo Supp.1997. The term "abandonment" in this statute has been defined by the courts as including "the intentional withholding by a parent of his care, love, protection and presence without just cause

**2.** Extensive changes were made to § 211.447 in 1998. This section of the 1997 statute read:

> 2. The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer, or in adoption cases, by a prospective parent, if the court finds that the termination is in the best interests of the child and when it appears by clear, cogent and convincing evidence that one or more of the following grounds for termination exist:
>
> (1) The child has been abandoned. The court shall find that the child has been

abandoned if, for a period of six months or longer for a child over one year of age or a period of sixty days or longer for a child under one year of age at the time of the filing of the petition:

 ✻ ✻ ✻ ✻ ✻ ✻

(b) The parent has, without good cause, left the child without any provision for parental support and without making arrangements to visit or communicate with the child, although able to do so;

§ 211.447.2(1)(b), RSMo Supp.1997.

or excuse." *In Interest of R.K.*, 982 S.W.2d 803, 806 (Mo.App.1998).

Mother asserts that she had not abandoned the children when she was first incarcerated, but had made arrangements for them to be cared for by a friend. She contends that the fact that DFS gained custody of the children while she was incarcerated and the fact that she was unable to visit the children during other periods when she was getting treatment to overcome her drug addiction precludes the trial court's finding of abandonment. Additionally, Mother states that the juvenile officer's requirement that she test drug-free before visiting the children was a condition which made it even more difficult for her to visit them.

■ In response to Mother's arguments, we cite a recent decision, *In Interest of Z.H.*, 5 S.W.3d 567 (Mo.App. W.D. 1999), in which this court stated that "involuntary denial of custody does not preclude a finding of abandonment if a parent's lack of involvement goes beyond what is attributable to the estrangement and discouragement caused by the enforced separation." *Id.* at 571. Mother's failure to maintain contact with her children clearly went beyond that which was attributable to her incarcerations and her inpatient drug treatment programs, as evidenced by the above chronology.

In *Z.H.*, this court also declared that all evidence of the parent's conduct both before and after the statutory period is to be considered in the court's determination of that intent. *Id.* at 569–70. Additionally, the court reaffirmed that the existence of nominal contacts between the parent and child does not preclude a finding of abandonment and that the courts "may attach little or no weight to infrequent visitations, communications, or contributions." *Id.* at 570 (quoting § 211.447.4, RSMo Supp. 1998).

■ The juvenile officer argues that Mother's contacts with her children were "infrequent" at best and that Mother's conduct both before and after the statutory period indicates an intent to abandon the children. In response to Mother's first point, the juvenile officer points out, and we agree, that there was sufficient evidence that Mother had abandoned the children. The evidence shows that over a period of two years, Mother visited the children only ten times, failed to communicate regularly with them, and failed to contribute to their support financially.

■ The juvenile officer concedes that in the year just prior to the filing, there was no period of precisely six months which did not include some sort of visit by Mother. However, the juvenile officer points out that there were two periods of just slightly under six months during which the children went without any type of contact with Mother. The provisions of the statute authorizing termination must be read with a measure of common sense and reasonableness, and not interpreted in a hyper-technical fashion. This court has previously stated that it would not allow parents to "maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment. Rather, the courts may regard such efforts as token and terminate parental rights despite their existence." *In Interest of M.L.K.*, 804 S.W.2d 398, 403 (Mo. App.1991) (citations omitted).

■ A court may disregard contacts that it finds to be "token or nominal." *Z.H.*, at 570. While the court did not find the father's contacts in that case to be "token or nominal," it was reasonable for the court to find Mother's contacts to be so in the case at hand. She rarely visited her children and provided little or no support for them. Although she did contact the children's caretakers occasionally by telephone, the lack of actual contact with her children greatly hindered the possibility of any meaningful relationship with the children.

■ The trial court did not attach great significance to Mother's statements

about her attempts to maintain a relationship with her children. The appellate court must defer to the trial court's ability to judge the credibility of witnesses and to choose between conflicting evidence. *S.H.*, 915 S.W.2d at 404. The trial court likely looked at Mother's numerous failed attempts at conquering her drug dependency and came to the conclusion, as in *S.H.*, that where there is a history of failure to successfully complete drug treatment programs, combined with a failure to overcome a drug addiction, provide a stable home, or maintain regular contact with the children, the "evidence is sufficient to justify termination of parental rights." *Id.* at 405. There was evidence to support the trial court's findings on this matter. Mother's first point is denied.

### Lack of Factual Findings

In Mother's second point on appeal, she states that the trial court erred by not including a specific factual finding that she was in fact able to visit or communicate with the children, which she says is required by § 211.447.3, as it applies to § 211.447.2(1)(b). Respondent counters that the factual finding is evident from the testimony presented at the hearing and from the court's order, which included the dates of Mother's last visit and communication with the children.

The Southern District of this court recently examined this very issue in *In the Matter of M.M.*, 973 S.W.2d 165 (Mo.App.1998). In *M.M.*, the court pointed out that the wording of § 211.447.2(1)(b) does not require that the judge make specific findings of fact, whereas the language of the other two subdivisions, §§ 211.447.2(2) and 211.447.2(3), do require such findings. *Id.* at 169. The same reasoning applies to the language of § 211.447.3, the subsection cited in Mother's brief, which reads: "When considering whether to terminate the parent-child relationship pursuant to subdivision (1), (2), (3), (4) or (5) of subsection 2 of this section, the court shall evaluate and make findings on the following factors, *when appropriate and applicable to the case....* " § 211.447.3, RSMo Supp.1997 (emphasis added).

Although this court did address a similar issue in a 1997 case, *In Interest of H.R.R.*, 945 S.W.2d 85, 89 (Mo.App.1997), in which we stated that we would be required to reverse and remand because the trial court failed to make findings on all issues required by the statute at issue, that portion of the statute, § 211.447.2(3), plainly states that "the court shall consider and make findings on the following...." *Id.* at 89 (quoting § 211.447.2(3), RSMo Supp.1997). In that case, the plain language of the statute requires a specific statement of those factual findings.

In contrast, the portion of the statute at issue here, § 211.447.3 as it applies to § 211.447.2(1), states that the court shall make findings, "when appropriate and applicable to the case." § 211.447.3, RSMo Supp.1997. The plain language of this section of the statute precludes Mother's second point on appeal. Point denied.

### Repentance

The Mother's third point is that she has repented and terminated the abandonment so that the grounds to terminate her parental rights no longer exist. As evidence of her repentance, she points out that she has sought drug treatment in an effort to overcome her addiction, that she has not used drugs for a period of two and one-half months, that she has obtained stable housing, that she wants to be reunited with her children, and that she is willing to undergo long term inpatient drug treatment if necessary in order to be reunited with the children.

While abandonment can be repented, it can be done only by the actual or attempted exercise of parental rights and duties following the abandonment. *M.L.K.*, 804 S.W.2d at 403. Again, the court looks at the inferred intent of the parent as deduced from all the evidence of the parent's conduct, and "[n]ot every ges-

ture by a natural parent will repent an abandonment." *Id.*

This court has stated in previous opinions that evidence of short-term improvements in a parent's circumstances which occur after the filing of the termination petition is not necessarily compelling and that a parent's post-filing conduct cannot be the sole factor in the court's determination of repentance. *T.T.*, 954 S.W.2d at 432. The court must look to the totality of a parent's conduct, both prior to and after the filing of the petition, "[o]therwise, a parent may argue that he has reformed since the filing of the petition; reformation having occurred while the child was away." *Id.*

Respondent argues that Mother's conduct is merely "token" and not enough to satisfy the abandonment exception of repentance. The trial court could so find. This does not mean that Mother is without sincerity in her expressions of commitment. We assume Mother is sincere, but the evidence does not demonstrate that Mother has undergone a degree of rehabilitation which will enable her to perform as a parent. The court had the right to conclude that it was not in the best interests of the children to continue to keep them waiting for Mother to become a functioning parent. This point is denied.

## Conclusion

For all the foregoing reasons, we do not find that the trial court's order is against the weight of the evidence. We hold that the trial court was correct in its determination that the children had been abandoned and that termination of parental rights is in the best interests of the children. Therefore, the court's order terminating Mother's parental rights is affirmed.

Judgment affirmed.

RIEDERER and ELLIS, JJ., concur.