In the Interest of A.M.C.

Juvenile Officer, Respondent,

v.

P.C. (Natural Father), Appellant,

T.W. (Natural Mother), Defendant.

No. WD 57334.

Missouri Court of Appeals,
Western District.

Nov. 21, 2000.

Pamela Lambert, Columbia, for appellant.

Elizabeth K. Magee, Columbia, for respondent.

Karen Digh, Fulton, for Guardian ad litem.

Before BRECKENRIDGE, P.J., and ULRICH and HOWARD, JJ.

HOWARD, Judge.

Natural father, P.C. (hereinafter "appellant"), appeals the judgment of the Circuit Court of Callaway County terminating his parental rights to A.M.C., a minor child. We affirm the circuit court's judgment and remand the case to the trial court for consideration of appellant's court-appoint-

ed counsel's motion for attorney's fees on appeal.

## Background

A.M.C. was born on August 14, 1995, to T.W. and appellant. T.W. had a terminal illness with an unknown life expectancy. On March 30, 1996, T.W. was treated for a suicide attempt at the Mid Missouri Mental Health Center. The Division of Family Services (hereinafter "DFS") received a call voicing concern for T.W.'s children.[1] The children were taken into protective custody on April 11, 1996, when DFS discovered that the children were residing with known sex offenders, and T.W.'s home was in an "unsanitary condition." On April 12, 1996, the trial court entered an emergency order of protective custody, granting DFS temporary custody and supervision of A.M.C. for placement in foster care. On April 16, 1996, the juvenile officer waived protective custody and returned A.M.C. to T.W. on the conditions that T.W. live alone, use DFS-provided daycare services, allow random DFS phone checks, and take advantage of DFS respite services. In addition, T.W. was ordered to have no contact with her brother and sister-in-law (both were registered sex offenders living at T.W.'s residence). It was also ordered that T.W.'s other two children have no contact with appellant and that appellant have only supervised visitation with A.M.C. A hearing was set for June on the petition.

On April 21, 1996, T.W. and appellant violated the court order and left Missouri with the children. They went to Las Vegas to get married. On April 22, 1996, the juvenile officer filed its first amended petition, again seeking immediate protective custody of A.M.C. The allegations included the following: on April 10, 1996, an investigation showed that T.W.'s home was in an "unsanitary condition," with animal feces throughout, clothes piled around and A.M.C. sleeping on a waterbed (a suffocation hazard for small children); A.M.C. was allowed to be around T.W.'s brother; in January of 1995, DFS had "found probable cause to believe that [appellant] had committed sexual abuse to a child, allegations that [DFS] received on or about February 10, 1994"; appellant had also been charged with second degree sexual assault and felony endangerment of a child and was thereafter convicted of an amended charge of sexual misconduct in 1992.

On May 6, 1996, after appellant and T.W. attempted to apply for state aid, Las Vegas officials picked the children up and returned them to Missouri officials. They were placed back in foster care. DFS maintained supervision of the children and "team meetings" were held in which A.M.C.'s parents' progress in working toward family reunification was tracked. Progress reports concerning the children and parents were made to the court. On May 30, 1997, the juvenile officer filed a third amended petition. Among others were the allegations that appellant had refused to provide DFS with his address, that appellant was with A.M.C. without supervision, and that appellant's sexual offender evaluation showed him to be at an "extremely high risk to reoffend." On August 5, 1997, a hearing on the petition as to appellant was heard. A.M.C. was then made a ward of the court in the custody and supervision of DFS for placement in foster care. Appellant was ordered to participate in and complete a sexual perpetrators program, to have no unsupervised contact with A.M.C., to participate in a substance abuse evaluation and follow treatment recommendations, to participate in a support group for persons with terminally ill family members, to maintain em-

---

1. At the time this matter arose, T.W. had three children—A.M.C. and two children born to another father. According to the juvenile officer's first amended petition seeking protective custody of A.M.C., her parental rights to another child had also been terminated on August 6, 1990. This opinion applies only to the termination proceeding in the interest of A.M.C.

ployment for six months if capable,[2] to participate in family therapy and to complete a sex offender program, which was expected to last at least two years. A.M.C. remained in foster care during the time in which appellant was ordered to complete the recommended treatment.

On April 13, 1998, the juvenile officer filed a petition for termination of appellant's parental rights. The case remained open on the docket until the termination hearing was held on February 17, 1999. Deanna Stubblefield, the DFS case manager assigned to A.M.C.'s case, testified on behalf of the juvenile officer and appellant testified on his own behalf. At the close of evidence, the trial court took the case under advisement and gave the parties until March 25, 1999, to file their proposed findings of fact and conclusions of law. The judgment terminating appellant's parental rights was entered March 30, 1999. This appeal followed.

### Standard of Review

Unless the judgment terminating appellant's parental rights is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law, we must affirm. *In re C.M.D.*, 18 S.W.3d 556, 560 (Mo.App. W.D.2000). In our review, we consider all facts and reasonable inferences therefrom in a light most favorable to the judgment below, and we will reverse "only when we firmly believe that the judgment is wrong." *Id.* Witness credibility issues are matters for the trial court to decide. *Id.*

### Point I

In his first point on appeal, appellant alleges that the trial court erred in terminating his parental rights, because the statutory requirements for termination of parental rights were not met. Specifically, he argues that "the only factor for involuntary termination was the child had been out of the home for one year and this was because the Division of Family Services had failed to comply with its obligation to make reasonable attempts to reunify the family or place the child with relatives."

Section 211.447.2 RSMo Cum. Supp.1997[3] provides in relevant part:

> The juvenile court may terminate the rights of a parent to a child upon a petition filed by the juvenile officer ... if the court finds that the termination is in the best interests of the child *and* when it appears by clear, cogent and convincing evidence that *one or more* of the [six] grounds [enumerated therein] exist.

(Emphasis added.) We consider evidence "clear, cogent and convincing" if it " 'instantly tilts the scales in favor of termination when weighed against the evidence in opposition and the finder of fact is left with the abiding conviction that the evidence is true.' " *Id.* (*quoting In the Interest of J.M.*, 815 S.W.2d 97, 101 (Mo.App. W.D.1991)). "This test may be met despite the presence of contrary evidence before the court." *In re J.W.*, 11 S.W.3d 699, 703 (Mo.App. W.D.1999). If the trial court determines that one or more of the statutory grounds for parental rights termination was adequately pleaded and proved, it must also determine whether termination is in the child's best interests. *In re C.M.D.*, 18 S.W.3d at 560.

In terminating appellant's parental rights, the trial court relied upon the

**2.** Appellant also had a chronic illness. He asserts that he was not supposed to work, but did so in order to abide by the court's order. However, the order did not say he *must* work, only that he was to maintain employment *if capable.*

**3.** Section 211.447 was amended effective July 1, 1998, between the filing of the petition for termination and the entry of the judgment. The trial court correctly made its findings of fact and conclusions of law under § 211.447 RSMo Cum.Supp.1997, and we conduct our review of the father's appeal under that version of the statute. *In re C.M.D.*, 18 S.W.3d at 561. Thus, all statutory references are to RSMo Cum.Supp.1997, unless otherwise noted.

grounds set forth in § 211.447.2(3), which states:

> The child has been under the jurisdiction of the juvenile court for a period of one year, and the court finds that the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, that there is little likelihood that those conditions will be remedied at an early date so that the child can be returned to the parent in the near future, or the continuation of the parent-child relationship greatly diminishes the child's prospects for early integration into a stable and permanent home. In determining whether to terminate parental rights under this subdivision, the court shall consider and make findings on the following:
>
> (a) The terms of a social service plan entered into by the parent and the division and the extent to which the parties have made progress in complying with those terms;
>
> (b) The success or failure of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child;
>
> (c) A mental condition which is shown by competent evidence either to be permanent or such that there is no reasonable likelihood that the condition can be reversed and which renders the parent unable to knowingly provide the child the necessary care, custody and control;
>
> (d) Chemical dependency which prevents the parent from consistently providing the necessary care, custody and control over the child and which cannot

be treated so as to enable the parent to consistently provide such care.

The trial court's judgment correctly tracks these required findings. Additionally, as required by § 211.447.3,[4] the court evaluated and made findings regarding the statutory factors therein that were appropriate and applicable to the case. Tracking the language of § 211.447.3(1)-(7),[5] the court found in its findings of fact (paragraphs 20, 22 and 23) and its conclusions of law (paragraphs 5 and 8):

> 20. [A.M.C.'s] parents [had] failed to acknowledge holidays or juvenile's birthdays with cards or gift, although [A.M.C.'s] parents did acknowledge Christmas, 1997 for [A.M.C.].
>
> . . .
>
> 22. [A.M.C.'s] parents [had] failed to contribute financially towards the care and maintenance of [A.M.C.], although [A.M.C.'s] parents [had] provided clothing for [A.M.C.] on a few occasions.
>
> 23. [A.M.C. had] limited emotional ties to his parents.
>
> . . .
>
> 5. . . . [A]dditional services [were] not likely to bring about lasting parental adjustment enabling a return of [A.M.C.] to the father or mother within an ascertainable period of time.
>
> . . .
>
> 8. [Appellant had] demonstrated a significant disinterest and lack of commitment towards [A.M.C.].

Subsections (6) and (7) of § 211.447.3 were not "appropriate and applicable," so the trial court made no findings on those factors.

■ In his argument, appellant alleges that the evidence failed to show that he abandoned A.M.C. The trial court made no

**4.** Section 211.447.3 states, "[w]hen considering whether to terminate the parent-child relationship pursuant to subdivision ... (3) ... of subsection 2 of this section, the court shall evaluate and make findings on [seven itemized] factors, when appropriate and applicable to the case." The trial court properly evaluated and made findings on these factors.

**5.** We set forth the trial court's findings as found in its judgment. The numbered paragraphs do not correspond to the numbered required findings of the statute.

such finding in terminating appellant's parental rights. Section 211.447.2, as set forth above, states that the court may terminate parental rights based on "*one or more*" of the six grounds enumerated therein. Abandonment, set forth in subsection (1) of that statute, is only one of the six grounds, and findings do not have to be made as to all six grounds. The court's judgment is based on its findings pursuant to subsection (3), not subsection (1), of § 211.447.2. Thus, we do not address appellant's abandonment argument.

■ The remaining portion of appellant's argument appears to suggest that the child was under the trial court's jurisdiction for a period exceeding one year, thereby making § 211.447.2(3) applicable, only because DFS failed to "comply with its obligation to make reasonable attempts to reunify the family or place the child with relatives." In particular, he complains that DFS changed his visitation schedule, so he was not able to maintain visitation with the child. He also complains that DFS failed to fund the ordered treatment, so he was unable to comply. He claims that "[h]e has been involved in the treatment recommended by DFS since the treatment was finally funded." However, his citation to the transcript does not support this claim. The page cited by appellant in support of his claim is from the testimony of Ms. Stubblefield. It does not stand for the proposition for which appellant cites it. Viewing the evidence in a light most favorable to the judgment, we found no support in the record for appellant's argument.

■ Moreover, "absence of treatment or services is no defense to a termination proceeding." *In the Interest of D.B.*, 916 S.W.2d 430, 434 (Mo.App. E.D.1996). Contrary to appellant's claim, the record indicates that DFS provided numerous services and made several reasonable attempts to "unify the family." Ms. Stubblefield testified that she supervised more than thirty of appellant's visitations with A.M.C. in Callaway County. Initially DFS allowed weekly visits, but the visits were gradually reduced to monthly due to appellant's behavior with A.M.C. and appellant's failure to comply with treatment requirements. Appellant also had supervised visitations while A.M.C. was living with a foster family in Boone County. When A.M.C. was initially removed from appellant's home, DFS also had team meetings, during which they set up a social service and treatment plan. Appellant was provided with notice of these meetings and attended some of them with T.W. His treatment plan required, among other things, a psychological evaluation, a sex offender evaluation and a substance abuse evaluation. Ms. Stubblefield testified that appellant would agree to the treatment plan "and then would fail to follow through on the treatment plan recommendations." For example, he only "sporadically" participated in the recommended couple's counseling. She also testified that although he eventually obtained the sex offender and substance abuse evaluations, he did not follow through with the recommended treatment as ordered.

Appellant claims that his failure to follow through was due to DFS's failure to respond to his requests for more information and for funding to be forwarded to the treatment providers. However, Ms. Stubblefield testified that she sent letters to the county where appellant resided authorizing or requesting that he receive the recommended treatment. She also made multiple attempts to refer him to therapy. She testified that if appellant was not happy with DFS arranging his treatment, he could have arranged for it on his own. His claims that he could not afford the treatment were defeated by her explanation that the providers accepted patients on a sliding scale fee basis. Although appellant eventually received some treatment, he consistently failed to follow through on it. This court has held that "DFS [does] not have to provide the parent all services at their disposal before the termination of parental rights. [Citation omitted.] When

the parents refuse to cooperate with and fail to progress in services offered, the court may find that additional services would be useless." *In the Interest of R.A.,* 913 S.W.2d 142, 146 (Mo.App. W.D.1996).

Appellant testified that he was making every effort to comply with the social plan, so he could be reunited with A.M.C. The trial court apparently did not attribute great credence to his statements. This court defers to the trial court's ability to determine the credibility of witnesses and to choose between conflicting evidence. *In re J.W.,* 11 S.W.3d at 704–05. "[C]lear, cogent and convincing" evidence, viewed in a light most favorable to termination, supports the trial court's findings that the statutory requirements for the termination of appellant's parental rights, pursuant to §§ 211.447.2(3) and 211.447.3, were met and that it was in A.M.C.'s best interests for appellant's parental rights to be terminated.

We note that in appellant's first point on appeal, he also contends that DFS somehow interfered with his visitations. As noted above, appellant's initial weekly visits with A.M.C. were reduced to monthly. The record reflects that appellant sought a hearing on the visitation issue, because it interfered with his work schedule, and the court ordered DFS to accommodate that schedule if possible. Monthly visitation was within the court's ordered visitation parameters, and the evidence supports a finding that DFS did not interfere.

Appellant also claims that DFS failed to place the children with relatives. Appellant's only statement related to family placement made in his brief is: "[T]he natural father's situation as to the conditions which let [sic] to the assumption of jurisdiction do not still exist.... The appellant lives in stable housing hear [sic] the paternal grandparents who are themselves approved for foster parenting in Camden County, Missouri." This statement is not an argument in support of appellant's claim that A.M.C. should have been placed with relatives. In fact, it appears to be an argument relating to appellant's conduct intended to show repentance of his abandonment of A.M.C. *See, e.g., In re J.W.,* 11 S.W.3d at 705–06. As stated above, the trial court's termination of appellant's parental rights was not grounded upon abandonment. His claim regarding family placement "stands without reference to any legal authority and is devoid of analysis. Without more, this Court cannot provide meaningful appellate review." *Green v. Lebanon R–III School Dist.,* 13 S.W.3d 278, 285 (Mo. banc 2000).

Point I is denied.

## Point II

■ In his second point on appeal, appellant alleges that he was denied due process in the termination proceedings because "he was not provided a speedy hearing which in itself was necessary to maintain the parental relationship."

Appellant's entire argument as to this point is as follows:

211.447 RSMo. Mandates a speedy hearing as do the Missouri and United States Constitutions. Because of considerations by the Juvenile Office for the availability of witnesses and lack of available court time this matter was repeatedly continued. (Transcript generally) Although the child was removed from the home of the Natural Mother in April 1996 the hearing on the child becoming a ward of the Juvenile court was not heard until August 5, 1997. (LF 27–39) The Division of Family Services began proceedings to terminate parental rights later that same month. (LF 27–39). Appellant was not provided the services he needed to reunify with the minor child until the spring 1998. See also Argument for Points I and II.

Section 211.447 does not specifically mandate a speedy hearing. The constitutional mandate on speedy trials relates to criminal cases. *See, e.g.,* the Sixth Amendment to the United States Constitution, made applicable to Missouri criminal de-

fendants by the Fourteenth Amendment, and by Article I, § 18(a) of the Missouri Constitution. No other authority is cited to support appellant's point, nor does he explain the absence of citations to supporting authority.

> Because an appellate court is not required to review an appellant's point relied on, which appears without citation of applicable or relevant authority, or if no authority exists, the appellant is required to include an explanation for the absence of citation, we find that the claim raised in [appellant's] Point [II] is abandoned.

*Coleman v. Gilyard*, 969 S.W.2d 271, 274 (Mo.App. W.D.1998) (citations omitted); Missouri Rule of Civil Procedure 84.04 (2000).

Point II is denied.

### Point III

In his third and final point on appeal, appellant alleges that the trial court's termination of his parental rights was against the weight of the evidence. Specifically, he alleges that the trial court erred in relying on the juvenile office and DFS's recommendations and in adopting the juvenile office's proposed order verbatim. He claims that substantial evidence showed that DFS "prejudged the necessity of termination prior to providing appellant with the services necessary for reunification."

■ Appellant's argument on this point is basically an extension of Point I. Even if DFS did indeed "prejudge" the necessity of termination, it does not mean that the termination of his parental rights was against the weight of the evidence. DFS does not terminate parental rights, that is the juvenile court's job pursuant to § 211.447. The juvenile officer bore the burden of proving strict and literal compliance with the statute. *In re A.M.C.*, 983 S.W.2d 635, 637 (Mo.App. S.D.1999).

We find that the juvenile officer satisfied its burden in this case. Ms. Stubblefield testified that in August of 1997, after A.M.C. had been in out-of-home placement for over a year with no change in his parents' progress, DFS began a termination "packet" or social summary, outlining DFS's future actions with regard to termination. DFS first became involved in A.M.C.'s life in April of 1996. Appellant now suggests that because DFS intended to seek termination, they had no reason to provide him with the services he required. However, as stated above in Point I, "absence of treatment or services is no defense to a termination proceeding." *In Interest of D.B.*, 916 S.W.2d at 434. Nonetheless, DFS made efforts to see that services were available to appellant. DFS's "case plan" entered on June 9, 1997, reflects the fact that DFS still expected to achieve family reunification and clearly set forth the recommended treatment plan for appellant. Termination did not occur for another two years after DFS started its "packet" evincing their intention to seek termination. Appellant had more than two years to abide by the treatment recommendations in order to continue his parental relationship with A.M.C. During that time, he did not make the necessary changes in his life. As appellant points out, the trial court is required to consider and make findings on "[t]he success or *failure* of the efforts of the juvenile officer, the division or other agency to aid the parent on a continuing basis in adjusting his circumstances or conduct to provide a proper home for the child." § 211.447.3(b) (appellant's emphasis). The trial court found that "[t]he efforts of [DFS had] failed to aid the parents on a continuing basis in adjusting their circumstances or conduct to provide a proper home for [A.M.C.]." That DFS's efforts failed does not mean that the trial court found DFS's services insufficient. It merely means that its efforts were not successful.

We found in Point I that "clear, cogent and convincing" evidence supports the trial court's finding that the statutory requirements for termination of appellant's parental rights, pursuant to §§ 211.447.2(3) and

211.447.3, were met and that the termination of appellant's parental rights was in A.M.C.'s best interests. Likewise, the weight of the evidence, as set forth above, supports the trial court's termination of appellant's parental rights.

Point III is denied.

### Conclusion

After finding that the trial court's judgment terminating appellant's parental rights is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law, we affirm.

Appellant's court-appointed counsel has moved for attorney's fees on appeal. In accordance with *In the Interest of K.L.*, 972 S.W.2d 456, 461–62 (Mo.App. W.D. 1998) (citations omitted):

Section 211.462.4 authorizes taxing a private party or agency, a state agency, or a county for attorney fees for a court-appointed attorney's trial and appellate work in termination of parental rights cases. Award of attorney fees is a matter of discretion for the circuit court.

Accordingly, we affirm the circuit court's judgment terminating appellant's parental rights and remand the case to the circuit court for its determination on counsel's motion for attorney's fees. *Id.*

BRECKENRIDGE, P.J., and ULRICH, J., concur.